PATRICK DRISCOLL *vs.* GEORGE H. TOWLE.

Suffolk.   March 5, 6, 1902. — May 22, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Master and Servant.*

In an action against a defendant engaged in a general teaming business, the only question was whether the driver of the horse and wagon that knocked down the plaintiff was the servant of the defendant. The driver's only contract of employment was with the defendant who paid him his wages, but for some time he had been carrying property for an electric lighting company under some arrangement made with that company by the defendant. Every morning the driver reported with his horse and wagon to the company and after carrying out its

orders all day returned at night to the defendant's stables. Sometimes he gave help, outside of driving his wagon and loading and unloading it, in pulling up arms on electric light poles or in pulling up machinery and the like. When the accident happened he was on his way to get some arms in pursuance of an order from the foreman of the company. *Held,* that there was evidence to go to the jury, that the driver was the servant of the defendant.

Tort for injuries from being struck and knocked down by some part of a horse or wagon of the defendant through the negligence of the driver alleged to be the defendant's servant, while the plaintiff was returning to the sidewalk after picking up a handkerchief dropped by the driver of a coal team. Writ dated October 21, 1899.

In the Superior Court the case was tried before *Maynard,* J. At the close of the plaintiff's evidence, the judge, at the request of the defendant, ruled that the plaintiff could not maintain his action, and directed a verdict for the defendant; and the plaintiff alleged exceptions.

*G. F. Ordway,* (*J. H. Sherburne, Jr.* with him,) for the plaintiff.

*G. C. Dickson,* for the defendant.

Holmes, C. J. This is an action for personal injuries caused by the plaintiff's being struck in the street by a horse or wagon driven by one Keenan. At the trial the judge directed a verdict for the defendant, and the plaintiff excepted. The only question is whether there was any evidence that Keenan was the defendant's servant.

The defendant " was engaged in general teaming business in Boston." He owned the horse and wagon, and employed Keenan and paid him his wages. Keenan's only contract of employment was with him. For some time, however, Keenan had been carrying property for the Boston Electric Light Company, under some arrangement between the latter and the defendant. The general course of business, or at least that adopted on the day of the accident, was this. Early in the morning Keenan took the horse and wagon from the defendant's stables and reported to the electric light company. An employee of that company would give him his orders as to what to do and where to go, and he spent the day in carrying these orders out. Sometimes he would help pull up arms on the poles, or pull up machinery, and the like. In driving, if he was directed to drive fast, he would

drive fast, and if told that he had time enough, he would take his time, but he chose his own route and had exclusive management of his horse. At night he returned to the defendant's stables. He harnessed and unharnessed the horse, and fed it at noon. At the moment of the accident he was going to get some arms in pursuance of an order from the foreman of the electric light company.

We are of opinion that these facts are at least evidence that Keenan was the defendant's servant.

It is true, of course, that a person admitted to be in the general employment of one may be lent to another, (with his own consent, *Delaware, Lackawanna & Western Railroad* v. *Hardy*, 30 Vroom, 35,) in such a way as to become the servant of that other for the occasion or for the time. Many cases have been decided on this ground. They generally depend upon the nature of the contract or arrangement, express or implied, between the general master and the third person. *Linnehan* v. *Rollins*, 137 Mass. 123. *Hasty* v. *Sears*, 157 Mass. 123. *Coughlan* v. *Cambridge*, 166 Mass. 268, 277, 278. *Samuelian* v. *American Tool & Machine Co.* 168 Mass. 12. *Donovan* v. *Laing, Wharton, & Down Construction Syndicate*, [1893] 1 Q. B. 629. *Rourke* v. *White Moss Colliery Co.* 2 C. P. D. 205. *Higgins* v. *Western Union Telegraph Co.* 156 N. Y. 75. But the mere fact that a servant is sent to do work pointed out to him by a person who has made a bargain with his master does not make him that person's servant. More than that is necessary to take him out of the relation established by the only contract which he has made and to make him a voluntary subject of a new sovereign, — as the master sometimes was called in the old books. *Dutton* v. *Amesbury National Bank*, *ante*, 154.

In this case the contract between the defendant and the electric light company was not stated in terms, but it fairly could have been found to have been an ordinary contract by the defendant to do his regular business by his servants in the common way. In all probability it was nothing more. Of course in such cases the party who employs the contractor indicates the work to be done and in that sense controls the servant, as he would control the contractor if he were present. But the person who receives such orders is not subject to the general orders of the

party who gives them. He does his own business in his own way, and the orders which he receives simply point out to him the work which he or his master has undertaken to do. There is not that degree of intimacy and generality in the subjection of one to the other which is necessary in order to identify the two and to make the employer liable under the fiction that the act of the employed is his act.

Of course the chances are that some orders will be given which are not strictly within the contract of the master. That is to be expected from the relative positions of the servant and the other party. If the latter has something that he wants done and sees a working man at hand, he is likely to ask him to do it, and if it is within the penumbra of his business the servant is likely to obey. While he thus goes outside his master's undertaking and his own contract with his master, he ceases to represent him, *Brown* v. *Jarvis Engineering Co.* 166 Mass. 75, and he may make the other liable for his acts, *Kimball* v. *Cushman*, 103 Mass. 194, but he does not on that account become the servant of his master's contractee for all purposes, or when he returns to the work which his master agreed to perform. The fact that Keenan sometimes gave help outside of loading or unloading his wagon could not be more than evidence, if it is that, of an arrangement giving the company more than ordinary control over him. At the most it was for the consideration of the jury and did not justify directing a verdict for the defendant as matter of law. *Preston* v. *Knight*, 120 Mass. 5. *Jones* v. *Scullard*, [1898] 2 Q. B. 565.

In cases like the present, there is a general consensus of authority that, although a driver may be ordered by those who have dealt with his master to go to this place or that, to take this or that burden, to hurry or to take his time, nevertheless in respect to the manner of his driving and the control of his horse he remains subject to no orders but those of the man who pays him. Therefore he can make no one else liable if he negligently runs a person down in the street. *Huff* v. *Ford*, 126 Mass. 24. *Reagan* v. *Casey*, 160 Mass. 374, 379. *Jones* v. *Liverpool*, 14 Q. B. D. 890. *Waldock* v. *Winfield*, [1901] 2 K. B. 596. *Quarman* v. *Burnett*, 6 M. & W. 499. *Laugher* v. *Pointer*, 5 B. & C. 547, 558. *Murray* v. *Dwight*, 161 N. Y. 301. *Lewis*

v. *Long Island Railroad*, 162 N. Y. 52, 66. *New York, Lake Erie & Western Railroad* v. *Steinbrenner*, 18 Vroom, 161. *Joslin* v. *Grand Rapids Ice Co.* 50 Mich. 516. *Little* v. *Hackett*, 116 U. S. 366.

*Exceptions sustained.*