### PHILADELPHIA & R. COAL & IRON CO. v. BARRIE.

(Circuit Court of Appeals, Eighth Circuit. March 23, 1910.)

#### No. 3,170.

1. MUNICIPAL CORPORATIONS (§ 821*)—SIDEWALKS—CONTRIBUTORY NEGLIGENCE—WHEN QUESTION FOR JURY.

A plaintiff, who was injured by stepping into an open coal hole in a sidewalk on a public street at a time when it was quite dark, cannot be held chargeable with contributory negligence as matter of law.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1754–1756; Dec. Dig. § 821.*]

2. MASTER AND SERVANT (§ 300*)—MASTER'S LIABILITY FOR NEGLIGENT ACT OF SERVANT—GROUNDS.

The ground upon which a master in any case is held liable for a negligent act of his servant is not because the servant in his negligent conduct represents the master, but upon the distinct ground that he is conducting the master's affairs, and the master is bound to see that his affairs are so conducted that others are not injured.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1209; Dec. Dig. § 300.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. MASTER AND SERVANT (§ 301\*)—LIABILITY FOR INJURIES TO THIRD PERSONS —RELATION OF PARTIES.**

Where defendant, a coal dealer, in delivering coal from its yards to customers, hired from another dealer a team and a driver in the latter's general employ, paying a stipulated sum per hour for their services, and having full control and direction of the work and the method of its performance, the driver, while engaged in such work, was a servant of defendant, which was liable for an injury to a third person, caused by the driver's negligence in its performance.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. § 301.\*]

In Error to the Circuit Court of the United States for the District of Minnesota.

Action by Lenora M. Barrie against the Philadelphia & Reading Coal & Iron Company. Judgment for plaintiff, and defendant brings error. Affirmed.

M. H. Boutelle and N. H. Chase, for plaintiff in error.

Owen P. McElmeel (Paul J. Thompson, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This was an action to recover damages for personal injuries alleged to have been sustained by the defendant in error, hereafter called the plaintiff, as a result of the negligence of the plaintiff in error, hereafter called the defendant. The record discloses the following facts:

The defendant had for some time prior to the accident been engaged in the general wholesale and retail coal business in the city of St. Paul, Minn., where various yards were maintained by it for storage, and from which coal was delivered in ordinary course to its customers as ordered. The defendant did not own its own teams, or furnish drivers in making local deliveries, but employed teams from other dealers from time to time. In this particular case it employed the team of one J. J. Martin, a dealer in coal in St. Paul, for which it agreed to pay him a certain amount per hour for the use of the team and driver, and agreed to settle with him twice a month for the number of hours his team or teams were employed in hauling and delivering the coal for the defendant. On the day of the accident to the plaintiff, Martin had furnished one of his teams to the defendant to haul coal for it, furnishing with the team a driver by the name of McQuistran. Further than furnishing the team and driver to deliver coal for the defendant at so much per hour for the time the team was actually employed, Martin had nothing whatever to do with the delivery of coal from the defendant's yards. The drivers, including McQuistran, received their instructions from the defendant as to the delivery of coal. The defendant directed from which of its yards the coal should be taken, how much, and where it was to be delivered, and issued all orders to the driver in connection with the delivery of coal to purchasers in various parts of the city.

On the 11th day of January, 1909, McQuistran, the driver, was directed by the defendant to deliver a load of coal to Tibbs, Hutchings & Co.'s store in St. Paul, and between 5 and 6 o'clock in the evening of that day he was engaged in unloading this load of coal, by shoveling the same from a wagon into a coal hole in the sidewalk in front of the store. The evidence shows that this coal hole, when not open for the purpose of delivering coal, was covered with an iron plate, or covering, set into the sidewalk a sufficient depth to bring the top of the upper side of the iron plate level with the top of the sidewalk. The plaintiff, as the record shows, was a customer at Tibbs, Hutchings & Co.'s store on the evening in question. She came out of the store with some bundles in her hands, and started to walk rapidly across the sidewalk for the purpose of taking a car to Minneapolis. She had only taken a few steps, when she fell into the open coal hole and was injured. Just what the driver was doing at the time plaintiff fell into the coal hole is not clear from the evidence. He testified that he noticed her as she came out of the store and stood for a moment on the steps, looking towards the street car, and did not see her again until he saw her prostrate on the sidewalk near the coal hole. Whether part of her body was in the coal hole he was not certain, but he testified that he thought not. He further testified that, upon discovering her, he went to her assistance, and, with the aid of another lady that came along at that time, lifted her up and helped her into the store. The evidence of all of the witnesses was to the effect that it was quite dark at the time the accident occurred, and the driver testified that the only guard placed about the hole to keep passers-by from falling into it was a few chunks of coal which he had placed around it.

Several errors are assigned, but the one relied upon is that the Circuit Court erred in refusing the defendant's motion, at the close of all the evidence, to direct a verdict in its favor. This motion is based upon two grounds: First, that McQuistran, the driver, was not the servant of the defendant, but the servant of an independent contractor; and, second, that the plaintiff was guilty of contributory negligence. The defendant admits that the weight of authority sustains the action of the Circuit Court in submitting the issue of contributory negligence to the jury. This admission is in harmony with our views, and it becomes unnecessary, therefore, to discuss the second ground of the motion. Mosheuvel v. District of Columbia, 191 U. S. 247, 24 Sup. Ct. 57, 48 L. Ed. 170, and cases there cited.

We come, then, to consider the first ground of the motion. The servant himself is, of course, liable for the consequences of his own carelessness; but when, as in this case, an attempt is made to impose upon the master liability for the negligence of the servant, it becomes necessary to inquire who was the master at the very time of the negligent act or omission. Standard Oil Co. v. Parkinson, 152 Fed. 681, 82 C. C. A. 29. It is elementary, notwithstanding the liability of a servant for his own negligence, that one who employs a servant to do his work is answerable to strangers for the negligent acts or omissions of the servant committed in the course of the service; but this is the extent of the master's liability. If the servant is engaged in work outside of the line of service for which he was employed, as, for instance,

doing his own work, or doing the work of some person other than the master, the master is not liable for his negligence. The reason that the master, in any case, is held liable for the negligent acts of his servants is not because the servant, in his negligent conduct, represents the master, but upon the distinct ground that he is conducting the master's affairs, and the master is bound to see that his affairs are so conducted that others are not injured. Farwell v. Worcester & Boston Railway Corporation, 4 Metc. (Mass.) 49, 38 Am. Dec. 339.

It is a rule universally recognized by the courts that, while one may be in the general service of another, yet he may, with respect to particular work, be transferred, with his own acquiescence, to the service of a third person in such a way that he becomes the servant of that person, with all the legal consequences of the new relation; and the question here is whether McQuistran was, under the facts disclosed by the record, the servant of Martin, his general employer, or the servant of the defendant, with respect to the particular work in which he was engaged at the time of the injury to the plaintiff. In discussing a similar question, the Supreme Court, in the case of Standard Oil Company v. Anderson, 212 U. S. 215, 29 Sup. Ct. 254 (53 L. Ed. 480), said:

"It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it, nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are for the time his workmen. In the second place, he who agrees to furnish the completed work, through servants over whom he retains control, is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his work. To determine whether a given case falls within one class or the other, we must inquire whose is the work being performed—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details, or the necessary co-operation, where the work furnished is part of the larger undertaking."

We think the facts disclosed by the record bring this case within the classification first mentioned in the case just cited, and that the Circuit Court correctly held that McQuistran, the driver, was the servant of the defendant at the time the plaintiff was injured. The evidence is undisputed that the only connection Martin had with the work there being conducted was to place the team and driver at the disposal of the defendant, to be used by it in its work, and to be under its exclusive control and subject to its orders, receiving therefor so much per hour for the use of the team and driver for the time engaged in the service of the defendant, not reserving to himself any control whatever over the team and driver in the performance of the work of delivering the coal. If Martin had agreed with the defendant to deliver a certain amount of coal at a given place, furnishing his own men and teams for

the work, retaining control over them, and directing the manner in which the work should be conducted to completion, subject only to the general direction of the defendant as to the work to be done, we would have a case more nearly within the rule contended for by the defendant, and within the second classification mentioned in Standard Oil Company v. Anderson, supra.

We do not consider it necessary to review the numerous cases in which courts have had occasion to examine this question, but call attention to the following cases, in addition to those already cited, in which, upon facts not differing in principle from those before us, the same conclusion was reached. Waters v. Pioneer Fuel Company, 52 Minn. 475, 55 N. W. 52, 38 Am. St. Rep. 564; Singer Manufacturing Company v. Rahn, 132 U. S. 518, 10 Sup. Ct. 175, 33 L. Ed. 440; Atlantic Transport Company v. Coneys, 82 Fed. 177, 28 C. C. A. 388; Byrne v. Kansas City Railway Company, 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693; De Forrest v. Wright, 2 Mich. 367.

Finding no error in the record prejudicial to the defendant, the judgment is affirmed.

SANBORN, Circuit Judge (concurring). The question in this case is whether the Coal & Iron Company or Martin was the master of the driver, McQuistran, in the latter's performance of the specific act of protecting pedestrians from stepping into the coal hole in the sidewalk while he was unloading the coal into it. When a master who has and exercises the power to hire and discharge his servant lets him and a team to a hirer, to go where and to do such known work as the hirer directs, the legal presumption is that, although the hirer directs the servant where to go and what to carry, or haul, or do, the driver still remains subject to the control of his general employer in the method of his performance of the work to which the hirer assigns him, and the hirer is not liable, in the absence of an agreement to the contrary for the negligence of the servant in the method or manner of his performance of his service. Donovan v. Laing, [1893] 1 Q. B. 629; Delory v. Blodgett, 185 Mass. 126, 129, 69 N. E. 1078, 1080, 64 L. R. A. 114, 102 Am. St. Rep. 328; Driscoll v. Towle, 181 Mass. 416, 419, 63 N. E. 922; Shepard v. Jacobs, 204 Mass. 110, 90 N. E. 392, 394; Brady v. Chicago & G. W. Ry. Co., 52 C. C. A. 48, 58, 114 Fed. 100, 110, 57 L. R. A. 712; Huff v. Ford, 126 Mass. 24, 30 Am. Rep. 645; Reagan v. Casey, 160 Mass. 374, 36 N. E. 58; Quarman v. Burnett, 6 M. & W. 499; Jones v. Corporation of Liverpool, 14 Q. B. D. 890; Lewis v. Long Island R. R. Co., 162 N. Y. 52, 56 N. E. 548; Joslin v. Grand Rapids Ice Co., 50 Mich. 516, 15 N. W. 887, 45 Am. Rep. 54; Stewart v. California Improvement Co., 131 Cal. 125, 129, 63 Pac. 177, 724, 52 L. R. A. 205; Frerker v. Nicholson, 41 Colo. 12, 92 Pac. 224, 13 L. R. A. (N. S.) 1122.

If, therefore, the proof in this case stopped with testimony that the Coal & Iron Company under its hiring had and exercised the power to direct the driver what amount of coal to take, and where and when to take and to deliver it, this evidence, in my opinion, would not have overcome the legal presumption that his general employer, Martin, was liable for his negligence in his method of doing his work, and that

the Coal Company was free from liability. But the local manager of the Coal Company testified, regarding this driver and others, that these men were instructed to deliver the coal under the Coal Company's orders:

"Q. And the method of delivery is under your orders? A. Yes, sir. Q. Place, the time, the amount, and all, is under your orders? A. I have said so two or three times."

Because this testimony indicates that the control of the method of the performance of the work of protecting the coal hole while the driver was unloading the coal had been transferred by some agreement between his general employer and the Coal Company from the former to the latter, this case seems to me to be taken out from the general rule and presumption which have been stated, and to have been properly submitted to the jury, and for that reason I concur in the affirmance of the judgment.