## THE SATILLA.

### (District Court, S. D. New York. March 6, 1915.)

**1. MASTER AND SERVANT &#x2550;&#x2550;316—MASTER'S LIABILITY FOR INJURY TO THIRD PERSONS—WORK OF INDEPENDENT CONTRACTORS.**

Stevedores, contracting to load a ship under the instructions of the owner, but who are only instructed generally as to the work to be done, which they control and direct, furnishing their own employés, including winchmen, to operate the ship's winches, are not employés, but independent contractors, for whose negligence the shipowner is not responsible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1242, 1243; Dec. Dig. &#x2550;&#x2550;316.]

**2. SHIPPING &#x2550;&#x2550;80 — LIABILITY OF VESSEL — NEGLIGENCE OF INDEPENDENT CONTRACTING STEVEDORES.**

A winch furnished by a ship for the use of contracting stevedores in loading steel rails from a lighter was defective, and sometimes stuck when in use, but could be operated with reasonable safety, with care. The defect was known to the ship, and also to the stevedores, who furnished the winchman. When a sling of rails was being hoisted, the winch stalled, and the winchman struck the drum with his hand, producing a jerk, which caused the rails to slip from the sling, striking and sinking the lighter. The jerk could have been avoided if the winchman had used a foot lever, with the working of which he was familiar. The sling load also was not made up as safely as was sometimes customary when there was danger that the load would slip. *Held*, that the ship was not liable

for the injury to the lighter, but that the stevedores, using the winch with knowledge of its defect, were responsible for its careful operation, and liable for the negligence of their employés.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 335, 341, 352; Dec. Dig. ☞80.]

In Admiralty. Suit by the New York Central & Hudson River Railroad Company, owner of the lighter Samson, against the steamship Satilla, of which the Texas City Steamship Company was claimant, with the Chiarello Bros. Company impleaded. Decree for libelant against Chiarello Bros. Libel dismissed as to the Satilla.

Barry, Wainwright, Thacher & Symmers, of New York City, for libelant.

Burlingham, Montgomery & Beecher, of New York City (Chauncey I. Clark, of New York City, of counsel), for claimant.

William J. Cleary, of New York City (Hyland & Zabriskie, of New York City, of counsel), for Chiarello Bros. Co.

HUNT, Circuit Judge. This is a libel of the New York Central & Hudson River Railroad Company, as owner of the lighter Samson and as bailee of the cargo laden therein, and on behalf of the crew thereof, against the steamer Satilla, her engines, boilers, etc., and all persons lawfully intervening in a cause of damage, civil and maritime.

It is charged that the lighter was damaged by the fall of certain railroad iron which was being hoisted on board the Satilla by means of the steamship's winch and tackle, operated by persons in the employ of the Satilla. Negligence is specified as follows: That the steamship was using improper equipment, winches, derrick, and tackle to discharge the rails; that the employés of the steamship, to discharge the rails, used the equipment, winches, derrick, and tackle of the steamship in an improper and negligent manner; that the persons employed by the steamship to make up the slings of rails on the deck of the lighter were incompetent, and made them up in a dangerous way, of which they were warned by libelant's crew; and that the discharge of the lighter was in charge of incompetent persons. A portion of the lighter's cargo was lost, together with certain equipment.

The claimant, the steamship company, filed its petition in damages under the fifty-ninth rule in admiralty against Chiarello Bros. Company and set up that the Chiarello Bros. were unloading the lighter Samson under a contract with the claimant for the loading of the Satilla, but that the Chiarello Bros. were in no way subject to the orders or instructions of the claimant; that the Satilla was properly equipped with winches, derrick, and tackle, and that the equipment was in proper working order at the time of the accident; and that any damages that may have occurred were not to be attributed to fault on the part of the steamship Satilla or those in charge of her, but to the negligence of Chiarello Bros. Company. The specifications as against the Chiarello Bros. are that the employés of the stevedores were incompetent, and made up the slings in an improper and dangerous way, that they used the equipment of the steamship in an improper and negligent way,

and that they failed properly to guide the sling of steel rails as it was being hoisted from the deck of the Samson.

The Texas City Steamship Company, owner and claimant of the steamship Satilla, answered that the persons engaged in loading the Satilla and the discharge of rails from the Samson to the Satilla were Chiarello Bros. Company, stevedores, and that the cargo was hoisted on board the Satilla by means of the steamship's winches and tackle operated by persons in the employ of the Satilla. The answer denies fault as against the steamship and those in charge of her, and pleads that the lighter was being unloaded by longshoremen employed by Chiarello Bros. Company, stevedores, with whom the claimant had a contract for the loading of the Satilla, and who were in no way subject to the orders or instructions of the claimant. Claimant alleges that the steamer was properly equipped with winches, derrick, and tackle to discharge the rails from the Samson into the Satilla, and that the equipment was in all respects in proper working order at the time of the accident, and says that, if there were any damages, they were due to the negligence of the Chiarello Bros. Company, in that the employés of the stevedores were incompetent, and made up the slings in an improper and dangerous manner, and they used the equipment of the steamship in the discharge of the rails in an improper and negligent manner.

The Chiarello Bros., answering the petition of the claimant, admit that the rails were hoisted on board the Satilla from the Samson by means of the steamship's winches and tackle, but deny any and all fault, and set up that the firm of Chiarello Bros. was employed by the claimant to load the cargo of iron rails, and that the steamship furnished the use of the steam winch and steam for the loading; that the firm was under and subject to the control and order of the claimant in loading the cargo and operating the winch; that they were obliged to use a steam winch which was out of order, and that the attention of the claimant was called to it before the happening of the accident, but that the company directed Chiarello Bros. to continue the use; and that there was no other way of loading the cargo, except by the use of the steam winch referred to. They set up that the rails were properly fastened, but that the winch faltered, causing the slings on the rails to jolt and to fall, and that the accident was wholly caused by the defective winch of the Satilla.

Upon the trial these matters were developed: The contract between Chiarello Bros., stevedores and contractors, and the Texas City Steamship Company, contains, among other things, covenants (a) that the contractors, when instructed by the company, would perform all services in loading and unloading cargoes of steamers owned or chartered by the company in New York, for certain stipulated prices; (b) that the contractors at their own cost would supply all the necessary tools and gear to perform such services, with the exception of ship's winches, booms, falls, and guides, hand trucks, and planks, "all of which are the property of the company and are loaned to the contractors with the distinct understanding that the same will be kept in proper repair and condition, and when damaged to the extent of being of no further use will be replaced by the contractors"; (c) that the contractors

should furnish all necessary winchmen, men to assist in docking steamers, etc.; and (d) that they would also be responsible for any damage to the ship's hull, machinery, tackle, or gear, or to any other property, such as lighters, that might be designated, owned, or used by the company or their shippers or consignees.

On November 27, 1912, the Satilla was lying at Pier 44, North River, New York. On the morning of November 27th the lighter Samson was hauled alongside the ship and made fast to the ship for the purposes of taking the cargo from the Samson and putting it into the steamship. Steel rails, the principal freight of the Samson, were hoisted on board the Satilla by a drum-hoisting engine and a winch belonging to the steamship, with tackle operated by the contracting stevedores. The contracting stevedores and their employé, the winchman who operated the winch, found that it was not working perfectly. The defect seems to have been this: The drum, which was forced by an operating mechanism into contact with a gear wheel by means of a sleeve operated by a hand lever, so as to produce friction, would occasionally stall, and, when the winch lever was moved, the spring which operated and released the drum would not so work as to release the friction contact and throw the drum laterally away from friction contact, and so let the drum run free. The steamship company knew of the defect; so did the contractors. In the afternoon of the day of the accident, three heavy rails, each about 32 feet long, and each weighing about 500 pounds, were fastened together by employés of the stevedores by means of a chain with a hook on the end. The chain was wound around the bundle twice, and the hook of the chain was passed under and then put into the eye of a cable which was at the end of a boom, and which, in turn, was swung over toward the hold of the ship and lowered by means of the winch. The rails were tied together at a distance about 10 feet from their ends.

Undoubtedly the rails were tied together in the usual and ordinary way adopted for lifting a bunch of three rails from a lighter to the hold of a ship. But it appeared that when the weather is cold, or circumstances are such as to make slipping seem very probable, resort is sometimes had to the use of blocks of wood, which are put under the chains in a way to lessen the chance of slipping, or that pieces of wood are put above the chains and in among the iron, so as to spread the irons above the line of tieing, or that sometimes pieces of rope are wound in and out between the irons above the binding line, to spread the iron somewhat, and so to make slipping less liable to occur. But none of these methods was used. The gangman, also an employé of the stevedores, gave the signal to the winchman to hoist. The winchman moved his lever, and the cable wound around the drum; and when the lower ends of the rails were about 15 feet above the deck of the lighter the winchman pulled the hand lever to hold the load stationary preparatory to swinging it over to the ship; but the spring did not work and the drum did not release properly. The winchman thereupon struck the drum with his hand in order to disengage it from the friction, when suddenly there was a jerk, the rails slipped out of their sling, fell end on to the deck of the lighter, and one of them pierced the deck and the bottom of the Samson thereby causing her to sink.

My understanding of the evidence is that the jerk was caused by the sudden release of the drum, but that such a jerk in all probability could not have been if the winchman had used the foot lever, which was part of the mechanism readily available to control the drum, when, being loose on the shaft, it would be overhauled by the load. Ordinarily the winchman could have controlled the drum while holding or lowering his load by the cone friction; but in case of stalling, and resort to knocking the drum away from friction contact, he was not sure to. The foot lever brake, however, was dependable in its operation, and could always be used for holding as well as lowering the load, and would, if used, prevent any jerk that might follow the sudden disengagement of the drum from the friction surface.

Thus we have the case of a machine defective in a way which affected one method of its operation; the defect being known by its owners, who furnished it to be used by the contractors, who also knew of the defect, its exact nature, and just what might be expected to happen in its operation unless the foot brake were used. The defect itself was not of a character which made the use of the winch very inconvenient or imminently dangerous, but still it was plainly sufficiently serious to attract the particular attention of the contractors, who, by actual experience with it, had learned that the drum was liable to falter and to stall, as has been explained. The winchman was a competent man, with experience, not alone in the work of operating winches generally, but familiar with this very engine, and with knowledge of the precise defect in its operation. And, as was said, he was the employé of the contractors, and not of the ship.

[1] That the contractors were what are called independent contractors is clear, I think; that is to say, there was no relationship of master and servant between the ship's owner and the Chiarello Bros., stevedores. The stevedores retained control of the winchman and others engaged in unloading and loading of the rails, so that the men who put the chain about the rails and the man who operated the winch were doing the work of the master stevedore when the accident occurred. The steamship company had made an express contract by which the stevedores, Chiarello Bros., should do the work undertaken through their own employés; the direction and control over such employés being with them. Under such conditions, the agreement being that they should do the work by their own servants, over whom they retained control, they became liable for negligence in conducting the work, and they are not to be relieved because the work being done was for the ultimate benefit of the steamship owners.

It does not alter the case to say that those in control of the ship pointed out in a general way the work to be done by the contractors. The direction given by the ship people was merely to indicate the work to be done and where the load was to be stored. In no other sense did they control the contractors, for neither the contractors, nor the men who tied the rails together, nor the winchmen, were subject to the general orders of the agents of the ship. As was said by Justice Holmes in Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922, there was not "that degree of intimacy and generality in the subjection of one to the other which is necessary in order to identify the two and to

make the employer liable under the fiction that the act of the employed is his act." The case is in many respects very like that of Murray v. Currie, L. R. 6 C. P. 24, approved of by the Supreme Court in Standard Oil Co. v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480.

[2] With the knowledge that the contractors had of the defective operation of the hoisting engine, they ought, when they continued to use the engine and drum, to have guarded against the accident by requiring the winchman to use the foot lever, or by requiring the men who tied the rails together to adopt additional means to reduce the chance of the rails slipping. The fact that complaint of the defective operation was made by the stevedores to the representatives of the ship is not lost sight of; yet inasmuch as the contractors were independent, and well knew of the defect, they cannot bring themselves within the rule which may permit a servant to go ahead and use a defective appliance, where the master directs him to proceed, assuring him that there is no imminent danger, and that the defect will be repaired with reasonable expedition.

My conclusion is that the use of the winch was by the stevedores, and not by the steamship, its officers, or its crew, and, under the contract made between Chiarello Bros. and the steamship owners, the contractors became responsible for damage to the lighter used by the steamship company, or their shippers, who might deliver cargo, and for cargo lost.

The ship not being liable for such negligence of the contractors, libelant must fail as against the Satilla and the owners; but, as the negligence of the contractors is established, decree in usual form will go in libelant's favor against Chiarello Bros.