**H. E. WOLFE CONST. CO. v. FERSNER.**

No. 3245.

Circuit Court of Appeals, Fourth Circuit.
April 12, 1932.

P. L. Felder and Robert Lide, both of Orangeburg, S. C. (Lide & Felder, of Orangeburg, S. C., and Merritt U. Hayden, of Detroit, Mich., on the brief), for appellant.

J. A. Berry and W. C. Wolfe, both of Orangeburg, S. C. (Berry & Berry, J. Leroy Dukes, and Wolfe & Wolfe, all of Orangeburg, S. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and HAYES, District Judge.

SOPER, Circuit Judge.

This action was brought by the administrator of Sallie Fersner against the H. E. Wolfe Construction Company to recover damages for her death. She was killed on July 29, 1930, while riding with her husband in a buggy on a public highway near Orangeburg, S. C., when the buggy was struck from behind by an automobile truck negligently driven by Jacob Hancock. The truck was owned by J. T. Gresham, Hancock's employer, and was being used at the time in the construction of a highway which the construction company was building under a contract with the state highway commission of South Carolina. There was a verdict and judgment for the plaintiff, from which the construction company has appealed.

Its contention is that the District Judge should have granted a motion offered by it for a directed verdict in its favor on the ground that Gresham was an independent subcontractor, solely responsible for his driver's negligence. Gresham owned a fleet of eight trucks and furnished them with drivers to the construction company to haul paving material from its warehouses near Orangeburg, to the point of paving on the highway, which, at the time of the accident, was ten miles distant. There was no written contract between Gresham and the construction company, but, under the arrangement between them, Gresham received an agreed price for each load of material which he moved. For this consideration, he provided the trucks and drivers, and kept the trucks in repair, and bought the necessary gasoline and oil. He paid the drivers' wages, and exercised the right to discharge them. But he did not do all the hauling of material, and no special part of this work was assigned to him. The construction company also owned a fleet of trucks which were used for hauling, side by side with those of Gresham, mingling with them in going to and fro between termini. At each end were stationed superintendents of the construction company, who directed and controlled the work of loading and unloading both fleets, and indicated when and where each truck was to go. Between the two points, the trucks in each fleet were under the control of their respective drivers, and the evidence does not show that the construction company actually exercised the right to direct how they should be driven; but the only reasonable inference is that the company had the right to control the driving

of both sets of trucks, for the defendant's evidence includes the general statements that "the hauling which Gresham was doing was done under the supervision and direction of the superintendents of the Wolfe Construction Company," and that "Gresham and his men were required to obey the orders of the superintendents of the Construction Company in doing this hauling."

■ These facts present the question whether the driver of the truck which caused the death of Mrs. Fersner was acting at the time as the servant of the construction company, or whether, on the other hand, although engaged in hauling the company's material, he remained the servant of Gresham, his general employer. It is generally held that when a master, with power to hire and discharge a servant, lets him and a vehicle to another to do such hauling as the hirer may direct, the legal presumption, in the absence of an agreement to the contrary, is that the driver remains subject to the control of his general employer in the method of the performance of the work which the hirer gives him to do, and the hirer is not liable for the negligence of the servant in the performance of the work. Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922; Lion Oil Refining Co. v. Lawrence (C. C. A.) 37 F.(2d) 256. But in this class of cases, as in all others in which the question of independent contractor is raised, the criterion is the power to control and direct the servants in the rendering of their service. The underlying principle is so clearly set out in the leading case of Standard Oil Co. v. Anderson, 212 U. S. 215, 221, 222, 29 S. Ct. 252, 254, 53 L. Ed. 480, that the statement will bear repetition here:

"It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are, for the time, his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed,—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking.

"These principles are sustained by the great weight of authority, to which some reference will now be made. The simplest case, and that which was earliest decided, was where horses and a driver were furnished by a liveryman. In such cases the hirer, though he suggests the course of the journey, and, in a certain sense, directs it, still does not become the master of the driver, and responsible for his negligence, unless he specifically directs or brings about the negligent act. Quarman v. Burnett, 6 Mees. & W. 499; Jones v. Mayor, etc., 14 Q. B. Div. 890; Little v. Hackett, 116 U. S. 366, 6 S. Ct. 391, 29 L. Ed. 652. Though even in such cases, if the exclusive control over the driver be in the hirer, he may be responsible as master. Jones v. Scullard, 2 Q. B. (1898) 565."

■ In the pending case, the arrangement between the parties involved, not merely supervision by the construction company at each end of the haul of the loading and unloading of the trucks, but also general direction over the hauling; and when it is borne in mind that the trucks of the company and those of Gresham were used in precisely the same manner, and that both sets of trucks were subject to the same direction and control, it is obvious that the company acquired an authority over the actions of Gresham's drivers incompatible with the position of independent subcontractor on his part. The case resembles more nearly Phila. & R. Coal & Iron Co. v. Barrie (C. C. A.) 179 F. 50, and Yelloway, Inc., v. Hawkins (C. C. A.) 38 F.(2d) 731, than those previously cited. We think that the District Judge was justified in refusing to direct a verdict for the construction company on this ground.

■ The appellant also contends that its motion for a directed verdict should have been sustained because there was no evidence that,

at the time of the accident, Hancock was operating the truck in connection with the construction of the highway. But this question was not raised in the court below. The only reason advanced for the granting of the motion was that, under the testimony, the relationship of independent subcontractor existed between Gresham and the construction company. The record does not purport to set out the evidence in full, and was obviously prepared to raise only the question decided above. Under these circumstances, the additional point may not now be advanced. It is only in exceptional cases that questions not pressed or passed upon below should be considered on appeal, and there are especially sound reasons for following this rule where the record has been prepared as in this case. Blair v. Oesterlein Mach. Co., 275 U. S. 220, 225, 48 S. Ct. 87, 72 L. Ed. 249.

We have considered the case on the merits and the judgment of the District Court would be affirmed, were it not for the fact that the judgment was joint and the appellant did not conform with the rule which requires the parties to a judgment or a decree to join in an appeal or writ of error or be detached from the right by some proper proceeding or by their renunciation. Winters v. U. S., 207 U. S. 564, 574, 28 S. Ct. 207, 52 L. Ed. 340; Hartford Accident & Indemnity Company v. O. L. Bunn, 52 S. Ct. 354, 76 L. Ed. ——, decided by the U. S. Supreme Court March 14, 1932. The usual procedure is by summons and severance of those who do not join in the appeal with the appellant. Hughes Federal Procedure, §§ 5430, 6153, 6154, 6155. This is a jurisdictional requisite, and the appeal will therefore be

Dismissed.