## HARTFORD ACCIDENT & INDEMNITY CO. v. ADDISON.

No. 8554.

Circuit Court of Appeals, Fifth Circuit.

Dec. 21, 1937.

Rehearing Denied Jan. 18, 1938.

628

Paul T. McMahon and J. J. Eckford, both of Dallas, Tex., for appellant.

Clyde E. Thomas, of Big Spring, Tex., for appellee.

Before HUTCHESON and HOLMES, Circuit Judges, and STRUM, District Judge.

STRUM, District Judge.

Appellant instituted this action to vacate an order of the Texas Industrial Accident Board awarding appellee compensation for the death of her husband, M. N. Addison. By cross-action appellee, Mrs. Addison, also sought to vacate the Board's award, which though favorable to her was apparently unsatisfactory to her in amount. Verdict was directed below for Mrs. Addison when both parties moved for directed verdicts at the conclusion of all the evidence. The insurance carrier appeals.

Addison was employed as a skilled oil field laborer by Younger Bros., for whom appellant is insurance carrier. Younger Bros. were teaming and trucking contractors who also furnished skilled oil field labor to others. Younger Bros. contracted with Sinclair Prairie Oil Company to furnish the latter teams for hauling at stated prices, and to furnish "extra labor at 65c per hour." When extra labor was needed, a Sinclair representative would call Younger Bros. and request that a stated number of men be supplied at a stated time. Pursuant to such a request, Younger Bros. on October 21, 1936, sent a squad of four men, including Addison, to perform labor for Sinclair in its oil drilling operations, as they had been doing for a month past or longer. This squad was in charge of one Walker, as subforeman for Younger Bros., who checked their time and was in general charge of the squad as a representative of Younger Bros. For supervisory purposes, Younger Bros.' general foreman visited the Sinclair job from time to time. When he was absent, Walker was "vice or head man" for Younger Bros. Upon arrival of the labor squad at the Sinclair job, they reported to a representative of Sinclair who would direct them "what to do and when to do it." There was evidence that Walker, as subforeman, also gave similar orders to his own squad. They were thus shifted about from one task to another at the Sinclair job as needed. It was Addison's duty "to do anything over there (for Sinclair) that was to be done in filling his hours."

On October 21, 1936, Addison had been variously engaged around the Sinclair job in the circumstances already stated. He undertook to assist two Sinclair employees in pulling rods from a water well. For this purpose, a line attached to the rod to be pulled was passed upward through an elevated pulley and thence down to an automobile truck which furnished the power for pulling. Under the strain, the pulley broke away from its fastening and fell on Addison, killing him. Whether Addison was specifically ordered to leave some other task and assist in pulling the rods, and if so, by whom, does not appear. A Sinclair employee had general charge of pulling the rods and was giving the immediate orders in connection therewith. The truck and pulling tackle belonged to Sinclair. No Younger Bros.' foreman was in the immediate vicinity at the time.

Under the Texas Compensation Law, Rev.St.Tex.1925, art. 8309, § 1, an injury is compensable only when sustained in the course of the servant's employment, which must have to do with the work or business of the employer sought to be charged. Appellant concedes that Addison was in the general employ of Younger Bros. It urges, however, that when Addison was sent to the Sinclair job to work as directed by Sinclair

representatives, he became a special employee of Sinclair, so that Sinclair's insurance carrier should compensate for his death rather than appellant, who is the insurance carrier for Younger Bros.

Appellant stands upon the principle that when one person puts his servant at the disposal of another for the performance of a particular service for the latter and under his exclusive control, the servant in respect of his acts in that service is to be dealt with as a servant of the latter and not of the former. Appellant relies upon Denton v. Yazoo & M. Valley R. Co., 284 U.S. 305, 52 S.Ct. 141, 76 L.Ed. 310, 313; Linstead v. Chesapeake & O. Ry. Co., 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453; Harrell v. Atlas Cement Co., 8 Cir., 250 F. 83; McLamb v. Du Pont, etc., Co., 4 Cir., 79 F.2d 966; Norfolk & W. Ry. Co. v. Hall, 4 Cir., 57 F.2d 1004; Maryland Casualty Co. v. Donnelly, Tex.Civ.App., 50 S.W.2d 388; Walker v. El Paso Ry. Co., 103 Tex. 259, 126 S.W. 262; and like cases. Cf. Green v. Sansom, 41 Fla. 94, 25 So. 332, cited with approval in Judson & Little v. Tucker, Tex.Civ.App., 156 S.W. 225. See, also, Sgattone v. Mulholland & Gotwals, 290 Pa. 341, 138 A. 855, 58 A.L.R. 1463.

In determining whether at the time of his injury Addison was Younger Bros.' employee, or had temporarily become Sinclair's employee, the ultimate and decisive test is who had the power to direct and control the employee in the performance of his work at the time of the injury, bearing in mind the distinction between authoritative control on the one hand, and mere supervision or suggestions as to the details of the work to see that it is performed according to contract, on the other. Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480; Denton v. Yazoo & M. Valley R. Co., supra; Security Union Co. v. McLeod, Tex.Com.App., 36 S.W.2d 449; 71 C.J. 421.

Addison being in the general employ of Younger Bros., in order to relieve the latter from the consequences of that relationship, it must appear that such relationship, for the time being, was suspended and a new relationship of master and servant created between Sinclair Company and Addison as to the work in question. As was said in Driscoll v. Towle, 181 Mass. 416, 63 N.E. 922, and quoted with approval in Standard Oil Co. v. Anderson, supra, "The mere fact that a servant is sent to do work pointed out to him by a person who has made a bargain with his master does not make him that person's servant; more than that is necessary to take him out of the relation established by the only contract which he has made and to make him a voluntary subject of a new sovereign,—as the master sometimes was called in the old books." Driscoll v. Towle is again adverted to with approval in Denton v. Yazoo R. Co., supra.

The facts here materially differ in principle from those in the cases relied upon by appellant, including Maryland Casualty Co. v. Donnelly, supra, which appellant stresses. This is not a case where one person puts his employee at the disposal of another for the performance of a particular service under the exclusive control of the latter, during the performance of which the employee, for the time being, entirely steps aside from the first employer's business and control and becomes a servant of the substituted employer.

The business of Younger Bros. was to furnish labor and teams to others on a contract basis. Addison was hired by Younger Bros. and received from them his general orders and compensation in connection with that business. It was an inherent incident of Addison's employment that his services would be utilized to supply labor to third parties in furtherance of Younger Bros.' business. Younger Bros. fixed his working hours and compensation, which differed from those of the Sinclair employees. Younger Bros. had authority to withdraw him at will from the Sinclair job and to send him to another job. Addison was sent to the Sinclair job, not as an identified individual, but simply as a unit of the labor service rendered by Younger Bros. to Sinclair pursuant to contract. In last analysis, what Younger Bros. really furnished to Sinclair was, not Addison, but the labor Addison performed. Any other competent workman could have been originally furnished or later substituted for Addison. This was not a special type of service for which Addison possessed peculiar qualifications. Sinclair simply requested a stated number of laborers of the type desired. Sinclair had no authority to discharge Addison, though they could require him to be withdrawn from the Sinclair job if his work there was unsatisfactory to Sinclair. Addison received his pay from Younger Bros. Sinclair did not reimburse Younger Bros. for Addison's services separately, but pay-

ments were periodically made in lump sums covering all "extra labor" furnished by Younger Bros. to Sinclair. Sinclair had no interest in, nor authority over, Addison's activities other than to designate what tasks he should undertake from time to time and to see that his work graded up to their requirements. Designating what jobs Addison was to do was not so much giving orders, as of information; compliance by Addison with the directions of Sinclair's representatives in this behalf was co-operative rather than acceptance of a substitute employment. Cf. Standard Oil v. Anderson, supra. Younger Bros. were represented on the job by their foreman or subforeman, and never relinquished but at all times retained and exercised a supervening and dominant control over Addison's employment, as distinguished from the particular tasks he undertook from hour to hour. The evidence supports the District Judge in holding that at the time of his injury Addison was Younger Bros.' employee, and in the course of his employment as such, within the meaning of the Texas compensation act. Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480; Driscoll v. Towle, 181 Mass. 416, 63 N.E. 922; Security Union Co. v. McLeod, Tex.Com.App., 36 S.W.2d 449; Manning v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 67 S.W.2d 389; Brooks v. Buckley, 291 Pa. 1, 139 A. 379.

As Addison had not worked in this employment substantially a year prior to his death, compensation was computed and judgment entered below pursuant to article 8309, § 1, first subd. 2, Texas Rev.Civ.Stat. on the basis of wages received by an employee "of the same class" who had worked substantially the preceding year "in the same or in a similar employment in the same or a neighboring place."

Appellant contends that the wages received by one Whittet, an employee of Sinclair, as to which appellee introduced evidence, did not afford a proper basis of comparison because Whittet had been employed as a "gang pusher" at 80 cents per hour during the last ten months of the year preceding Addison's death, whereas Addison's employment was that of an ordinary laborer. That contention is perhaps correct. But there is other evidence.

On redirect examination, the chief clerk of Sinclair Company, the latter being engaged in oil drilling operations, after referring specifically to Whittet and another employee, further testified: "We had men on our payroll that worked substantially the whole of the year next preceding October 21, 1936 in the same kind and similar kinds and class of work that Mr. Addison was doing about the yard. We paid such man or men that did the same kind and class of work that Mr. Addison was doing and that had worked for about a year, approximately 74c an hour, six hours a day, six days a week." This testimony is uncontradicted, and is in addition to the testimony concerning Whittet's wages. Without opposing or qualifying evidence, it affords an appropriate basis of comparison under article 8309, § 1, first subd. 2, supra.

The District Judge computed compensation on a wage base of 74 cents per hour. Appellee concedes, however, that the computation was erroneously made on an 8-hour day basis, as worked by Younger Bros.' employees, when it should have been computed on a 6-hour day basis, as worked by Sinclair's employees whose hourly wages were used as a basis of comparison.

This mechanical or arithmetical error has been cured by the appellee filing a remittitur appropriate to reduce the calculation to a 6-hour basis, which in turn reduces the appropriate compensation rate from $20 per week, as computed by the District Judge, to $15.37 per week, which it should be. As thus modified by the remittitur, the judgment is affirmed.