**TEXAS EMPLOYERS' INS. ASS'N**

v.

**BROOKS et al.**

No. 6353.

Court of Civil Appeals of Texas. Amarillo.

Oct. 26, 1953.

Rehearing Denied Nov. 30, 1953.

 

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, for appellant.

Merchant & Fitzjarrald, Amarillo, Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellees.

NORTHCUTT, Justice.

This is a compensation case. Appellee, Winford D. Brooks, is the injured employee. He received a compensable injury while working as a jack hammer operator. It is not questioned that he is entitled to compensation, neither is there any question as to the reasonableness of the doctor bills. The main issue is who was the employer of Brooks at the time he was injured. There are other points to be determined in this appeal but a correct determination of the issue as to who was the employer of appellee at the time he sustained his injury will determine the issue as to which of the two compensation insurance companies involved owe him the money. The material facts, as we view them, are not so complicated.

On January 25, 1952, Winford D. Brooks was employed as a jack hammer operator in helping dismantle or tear down certain portions of the Amarillo National Bank as said bank was enlarging and improving its building and place of business. The improvements were being made by Floyd Richards as a general contractor and Employers' Mutual Liability Insurance Company of Wisconsin was the compensation insurance carrier for Floyd Richards.

Winford D. Brooks had been working for J. L. Milligan for a few weeks and Texas Employers' Insurance Association was a compensation insurance carrier for J. L. Milligan. Mr. Milligan had theretofore been doing other work on this job. Mr. Richards, or one of his foremen, decided they needed some jack hammer work done on the job. They requested Mr. Milligan or his foreman to come and bring his men and jack hammers to do some jack hammer work. Mr. Milligan was paid by Mr. Richards a certain amount per hour

for his men and the jack hammers. Mr. Milligan paid Mr. Brooks $1.25 per hour and collected from Mr. Richards $1.50 or $1.75 per hour for Mr. Brooks' work.

This case was tried to a jury upon special issues and in determining by whom Mr. Brooks was employed the trial court propounded two questions to the jury as follows:

"Special Issue No. 5"

"In the doing of the work generally that Winford D. Brooks did at the bank, who, if anyone, do you find from the preponderance of the evidence had the right to control and direct said work, both as to the work to be done and the manner in which it was done?"

"Special Issue No. 6"

"In the doing of the particular work that Winford D. Brooks was engaged in at the time the wall collapsed, who, if anyone, do you find from the preponderance of the evidence had the right to control and direct said work, both as to the work to be done and the manner in which it was done?"

The jury answered J. Lee Milligan to both of these issues.

The appellant combines its first two assignments of error as relating to the same subject, contending that as a matter of law, though in the general employ of Milligan, Brooks had become for the time the special or borrowed employee of Richards but, if not true as a matter of law, the record herein requires that the case be reversed because the evidence is insufficient to support the jury's verdict in that the verdict is so clearly against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

■ . The undisputed record in this case shows that Mr. Milligan sent his jack hammers and men to use them over to the bank to do whatever jack hammer work was necessary. He sent any man he desired to send to use the hammers and did send different men at different times. In reference to determining whether Brooks was the employee of Milligan or Richards the only difference in the contention of the parties appears to be as to the matters covered by the two special issues above set out. The undisputed evidence is that Mr. Milligan and his foreman were the only ones that ever instructed Mr. Brooks how to use the jack hammer. Mr. Milligan is the only one who paid Mr. Brooks for his services. He told him when to work and where to work, kept the jack hammers in condition, took out of his wages his social security and income tax, had the right to discharge him at any time, and checked on him to see that he was on the job, and would have discharged Brooks if he told him to do a certain thing there on the job and Brooks had failed to do so even though Mr. Richards had told him to do something else. Mr. Milligan sent Brooks and other men there to do the jack hammer work that was to be done. All that Mr. Richards told Brooks was what walls and vault he wanted worked upon. This jack hammer work was solely upon a fully operated basis. We are of the opinion that there was sufficient evidence to substantiate the findings of the jury and that under the record in this case and the findings of the jury that Mr. Brooks was the employee of J. L. Milligan. In the case of Insurors Indemnity & Insurance Co. v. Pridgen, 223 S.W.2d 217, 220, by the Supreme Court of this state, it is stated:

"In the instant case, moreover, we have the undisputed testimony that all parties understood the lease to be on a 'fully operated' basis which in our view negatives the right of the lessee to dictate the manner—or in the final analysis even the subject—of the operation of the machine. Certainly no one would suggest that Zinnecker had the right to require the Pridgens to run the machine motor faster or slower, to lower or raise the boom to a particular angle or otherwise direct the details of the operation, and evidently A. O. Pridgen would not without previous approval of Smith have used the machine for some

purpose for which he considered it unsuited. As suggested in Hartford Accident & Indemnity Co. v. Addison, 5 Cir., 93 F.2d 627, in which the party corresponding to Shipyard in the present case was held not to be a special employer, there is a vast difference between the right to point out the location and dimensions of a pit to be dug or indicate a pile of concrete slabs to be loaded into a truck, and, on the other hand, the right to direct the details of how such work is to be accomplished. There was a clear 'absence of evidence' that Shipyard either was to control such details or made any attempt in fact to control them."

Mr. Richards did not hire Mr. Brooks and neither did he have the right to discharge him or to exercise any authority with respect to the manner and conduct of work or undertaking being performed. All Mr. Richards could do was to tell Mr. Brooks what he wanted done and thereafter if Mr. Richards was not satisfied was to notify Mr. Milligan. There is nothing in this record to indicate other than that Mr. Milligan sent his jack hammers with operators over to do whatever jack hammer work was to be performed. Mr. Richards was not to pay the operators nor to direct the manner in which they performed the work but only had the right to tell or point out to the operators just what piece of work he wanted done. There is nothing in this record to even indicate that Mr. Richards had the right to direct the operators in the details of how the jack hammers were to be managed or operated or in any manner used to accomplish the desired results. Appellant's assignments of error 1 and 2 are therefore overruled.

■ Appellant combines its 3rd and 4th assignments of error as related to the exclusion of certain testimony tendered by appellant during its examination of Milligan. We believe that this matter can be best understood if the exact record is given in question and answer as developed at the trial as follows:

"Q. Now, it is in evidence that the accident itself was caused by a collapsing wall which Mr. Brooks was working on with a jack hammer. Prior to the time of the accident did you have any knowledge that Mr. Brooks was working on that wall? A. No, sir.

"Q. Was he working on that wall by any instruction that you had given him? A. No, sir.

"Q. Had anybody consulted you upon the subject of making any use of Mr. Brooks on that particular wall in the thing he was doing at the time it collapsed? A. No, sir.

"Q. Now, it is in evidence that prior to the time the wall collapsed Mr. Brooks was working on it with a jack hammer at a point which has been described as being not too far above the floor, maybe a foot and a half, maybe two or three feet. Did you have any knowledge that he was doing that? A. No, sir.

"Q. Was that part of the work done with your consent? A. No, sir.

"Q. Did anybody at all consult you about doing that particular thing that he was doing when the wall collapsed? A. No, sir.

"Q. Now, tell me this, Mr. Milligan, is there something about the particular thing he was doing at the time of the accident that is sufficiently objectionable to you that if you had been asked about it, you would not have permitted it? A. Certainly.

"Mr. Martin: We see no materiality to that, there being no fault issue."

The objection of Mr. Martin was sustained. This all took place in the presence of the jury. For the purpose of appellant perfecting its exceptions to the ruling of the court, the jury was retired and the following questions were propounded and answers given: "Now, tell me this, Mr. Milligan,

is there something about the particular thing he was doing at the time of the accident that is sufficiently objectionable to you that if you had been asked about it, you would not have permitted it? A. That is right. I wouldn't ask no man to cut the wall at the bottom of the wall. I would begin at the top and have them cut it down. Now, who asked them, I do not know." "Q. And it is your definite testimony, Mr. Milligan, that had you had supervision of the particular thing that was being done at the time of the accident, Mr. Brooks would not have been doing the thing that produced the accident? A. That is right." It is the refusal of this testimony that appellant assigns as error in its assignments of error 3 and 4. The question of who was negligent in this matter is not involved here. This was a hypothetical question not based upon any fact. Certainly Milligan was not present at the time and could not have been asked anything. Milligan is asked what he would have done had he been supervising the work, which we construe as being nothing more than in what manner he would have instructed Brooks if he had been present. He was not present but he had the right to supervise and direct the work done by Brooks whether present or not. We are of the opinion that there is no question but what Mr. Milligan had the authority to move Brooks at any time he saw fit. Mr. Milligan took Brooks over to this place to do whatever jack hammer work was necessary. All that Richards or his foreman did was to determine what jack hammer work was necessary. There is no proof that Richards or his foreman was supervising the particular thing that was being done but only told Brooks the next thing that he would like for Brooks to do was "over there"—and told him about how high to do the work. Appellant's assignments of error 3 and 4 are overruled.

By appellant's assignments of error 5 and 6 it complains of the refusal of the court to give its requested special charges 1 and 2. The effect of these two requested charges was that if Seth, the foreman of Floyd Richards, assumed control of Winford D. Brooks with respect to what he should do and how he should do it that then and in that event Brooks would be the employee of Richards and not the employee of Milligan. We are of the opinion that the trial court agreed with this point of law and asked the jury in submitting the special issues above set out as to who had the right to control and direct as to the work to be done and the manner in which it was done. The jury said Mr. Milligan had this right. After the jury found who had this right, the trial court followed the law as desired by appellant. Appellant's assignments of error 5 and 6 are overruled.

Appellant's assignments of error 7, 8, and 9 all deal with the arguments of counsel and all three assignments will be discussed together. We have carefully considered all the arguments made by counsel in this case and especially the arguments that were objected to and we are of the opinion that there was no such error as to cause reversal of this case. We believe that counsel may state to the jury such facts as he, in good faith, draws from all the circumstances of the case. His reasoning may be wrong and in fact may not even be logical but the court may not instruct him to any certain view of the facts or deductions to be drawn therefrom. It is often true that the way a witness says a thing that different jurors may differ as to what his testimony really meant. In the case of Ford Motor Co. v. Whitt, Tex.Civ.App., 81 S.W.2d 1032, 1038, in which a writ of error was denied, it is stated: "Counsel are given much latitude in arguing issues of fact, and this applies to the inferences drawn from evidence offered or evidence not offered, if it reasonably appears it could have been offered." Appellant's assignments of error 7, 8, and 9 are overruled.

Judgment of the trial court is affirmed.