## WILLIAMS v. NELSON.

No. 2679.   Decided December 11, 1914 (145 Pac. 39).

1. LIMITATION OF ACTIONS—NEW ACTION AFTER DISMISSAL.   Under Comp. Laws 1907, section 2893, providing that if any action be commenced within due time, and if plaintiff fail in such action otherwise than upon the merits, he may commence a new action within one year thereafter, where a nonsuit is granted the action fails otherwise than upon the merits, and the reason for which the nonsuit is granted is immaterial. (Page 261.)

2. PLEADING—SEPARATE COUNTS—"CAUSE OF ACTION."   Under the code system of pleading, where there is but one promise, agreement, obligation, or imposed duty, there is but one primary right, one primary duty, and one delict, and these three combined constitute one "cause of action"; and though the pleader states the facts in different ways because of a doubt as to the ground upon which he will be entitled to judgment, or a doubt as to the facts which the evidence in the possession and under the control of his adversary may develop, this constitutes a duplicate statement of one right of action, and these different statements are not separate causes of action. (Page 261.)

3. PLEADING—SEPARATE COUNTS—ELECTION.   Where plaintiff states his cause of action in different ways because of a doubt as to the ground upon which he will be entitled to judgment, or a doubt as to the facts which the evidence may establish, it is error to require him to elect upon which count he will rely for a recovery, and the complaint should be considered in its entirety, the evidence applied to the whole pleading, and such

relief granted as the pleadings support and the evidence justi-
fies.[1]  (Page 261.)

4.  BROKERS—ACTIONS FOR COMMISSIONS—ISSUES, PROOF, AND VARI-
ANCE.  A complaint alleged that defendant employed plaintiff
to sell certain mining claims, and agreed to pay plaintiff a
commission of ten per cent. for the sale thereof, when the
sale was made, and that such claims were sold through plain-
tiff's efforts.  It was then alleged, as a so-called second cause
of action, that defendant employed plaintiff to assist him in
selling such mining properties, and to do and perform services
for defendant in finding a purchaser; and that defendant
agreed to pay plaintiff for such services ten per cent. of the
price for which the property might be sold, whether the sale
was made through defendant's efforts, or the efforts of plain-
tiff, or the joint efforts and labors of both.  It was contended
that the first cause of action relied upon an express promise,
and the second upon an implied promise.  Plaintiff testified
that he had at one time been interested in the mining claims
in question; that defendant asked him to help to sell them,
stating that he could be reimbursed partly for what he had
lost on the claims; that they would try and sell them and if
they were successful he would give plaintiff a commission, and
that whenever the property was sold he would pay ten per cent.
commission for whatever services plaintiff had rendered; and
that he performed services in bringing about a sale.  *Held*,
that there was, in legal effect, no substantial difference between
the two so-called causes of action, and the evidence was
admissible and justified a recovery under either count, it being
immaterial so far as plaintiff's right to compensation was con-
cerned, whether it was termed a commission or compensation.[2]
(Page 263.)

5.  ACTION—JOINDER.  Parties may incorporate into one contract
as many conditions and promises as they may desire, and may
declare upon and enforce all such conditions in one cause of
action, unless they are so repugnant as to destroy each other.
(Page 263.)

6.  LIMITATION OF ACTIONS—NEW ACTION AFTER DISMISSAL OF FOR-
MER ACTION.  A complaint in an action in which a nonsuit was
granted, and which was commenced before the action was
barred by limitations, alleged that defendant employed plaintiff
to sell certain mining claims, and agreed to pay him a com-
mission of ten per cent. on the selling price, and that a sale

[1] *Oborndorfer* v. *Moyer*, 30 Utah 325; 84 Pac. 1102.
[2] *Casady* v. *Casady*, 31 Utah 394; 88 Pac. 32.

was brought about by plaintiff. The complaint, in an action commenced within one year after the granting of the nonsuit, alleged that defendant employed plaintiff to assist him in selling such mining claims and to perform services in finding a purchaser, and agreed to pay plaintiff for such services ten per cent. of the selling price when the sale was made, whether made through the efforts of plaintiff or defendant, or by the joint efforts and labors of both. *Held*, that the causes of action in both complaints were the same; and hence the second action was not barred by limitations, under Comp Laws 1907, section 2893. (Page 263.)

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong*, Judge.

Action by D. J. Williams against Joseph Nelson.

Judgment for defendant. Plaintiff appeals.

REVERSED and remanded with directions.

*Chris Mathison* for appellant.

*Young, Snow, Ashton & Young* for respondent.

FRICK, J.

The plaintiff commenced this action to recover a commission or compensation for services rendered which he alleges resulted in the sale of certain mining property owned by the defendant. The complaint contains what is contended constitutes three "causes of action." In the so-called first cause of action, it is in substance alleged that on April 23, 1903, the defendant was the owner of certain mining claims located in Salt Lake County, fully describing them; that on or about the 30th day of April, 1903, the defendant employed the plaintiff to sell said mining claims "and agreed to pay the plaintiff a commission of ten per cent. for the sale thereof"— that is, ten per cent. of the sale price, which "was to be paid to this plaintiff by the defendant when said sale was made"; that pursuant to said agreement the plaintiff showed said property to prospective purchasers, and at times opened negotiations with different parties for the sale thereof. What

Vol. 45—17

was done in that regard by plaintiff is fully set forth. It is
further alleged "that by reason of plaintiff's continuous
efforts, explanations, illustrations, and representations to Jos.
E. Edmunds of the advantages and values of said mining
property, the said Jos. E. Edmunds did, on the 6th day of
December, 1906, pay to Joseph Nelson (the defendant) the
sum of $50,000, and did therewith purchase from the defend-
ant all of said mining property." It is further alleged "that
said mining property was sold through the efforts of plain-
tiff, and that said plaintiff was the procuring cause of said
sale." It is then alleged that ten per cent. is the regular
commission, and "that plaintiff's services rendered during
and between the dates named in reference to the sale of this
property were reasonably worth $5,000, and that ten per
cent. of the sale price is justly due and owing to the plaintiff
in this action." It is then alleged that payment of said
commission was demanded and refused. For the purpose of
avoiding the plea that the action was barred, it was also
alleged, in appropriate terms, that a prior action upon the
same cause of action had been timely commenced, but had
failed otherwise than upon the merits. Judgment for $5,000
was prayed for in the first alleged cause of action. The
plaintiff then proceeded to state what is termed a second
cause of action, in which the dates respecting the employ-
ment, the ownership, and description of the mining claims
are precisely as alleged in the first cause of action. The
only difference between the so-called first and second causes
of action is that in the alleged second cause of action it is
stated that the defendant employed the plaintiff "to assist
the defendant in selling the mining properties mentioned
herein and to do and perform services for the defendant in
finding a purchaser therefor, and the defendant agreed to
pay the plaintiff for said services ten per cent. of the price
for which said property might be sold," which ten per cent.,
it is alleged, was payable when the sale was made, "whether
said sale was perfected through the efforts of this plaintiff
alone, or through the efforts of the defendant, or whether
said sale was perfected by the joint efforts and labors of both
plaintiff and defendant." What plaintiff did by way of pro-

curing a purchaser for said mining claims is again fully set
forth, and the date of the sale, the amount of the purchase
price, and the person to whom sold are alleged in substan-
tially the same terms as in the alleged first cause of action.
The bringing of a prior action is also again stated, and judg-
ment prayed for the same as in the preceding cause of action.
Practically the same allegations are again repeated in what is
denominated a third cause of action. To these several causes
the defendant filed an answer in which he admitted that he
was the owner of the mining claims at the date alleged, and
denied generally all other allegations of the complaint. He
also averred that the alleged causes of action were barred.
A separate answer was directed to each one of the alleged
causes of action.

The case was tried to the court without a jury. Plaintiff,
in substance, testified that he was well acquainted with the
mining claims in question; that at one time he was a stock-
holder in a corporation which owned them; that in April,
1903, he had a conversation with the defendant; that the
defendant then stated to the plaintiff that he, the defendant,
was not familiar with the mining business and wanted plain-
tiff to help sell the mining claims in question and get them
off defendant's hands; that the defendant, addressing plain-
tiff, said, "You have lost, of course, on it (the mining claims)
and you can be reimbursed partly by helping me sell this
property, and now," he said to me, "Dave, will you take
hold of it and do the best you can, and we will both try and
sell it, and, if successful, I am going to give you a commis-
sion; I will pay you a reasonable commission." The witness
further testified that the defendant, in substance, said to
him that whenever the property was sold the plaintiff would
be paid ten per cent. commission out of the property for
whatever services he rendered. "He [meaning defendant]
stated it this way: That he wanted me to help him in various
ways, and I would get nothing for my services until the
property was sold." The witness said that he had several
conversations with the defendant from time to time in which
the latter substantially made the same promises and state-
ments as we have just outlined. He further testified that,

pursuant to these conversations, he made efforts to sell the property, and, for that purpose, showed it to various prospective purchasers by taking them to and over the property; that he in particular labored with Jos. E. Edmunds to purchase the same, who thereafter purchased it from the defendant. The plaintiff stated in detail what he did in order to bring about the sale. Plaintiff's statements were, to some extent at least, supported by another witness, who testified that he and a Mr. Evans were prospective purchasers; that the defendant introduced the witness to the plaintiff, and that he "gave me the impression" that the plaintiff was acting as defendant's agent in selling the property; that the defendant said that plaintiff would show the property to the witness, and the plaintiff did take the witness and Mr. Evans to the property and showed it to them; that terms of sale were discussed by the parties, but they could not agree upon a price. The plaintiff introduced in evidence a warranty deed for the mining claims in question from the defendant and wife to Jos. E. Edmunds which was executed December 6, 1906, and in which the expressed consideration was $50,000. Plaintiff also testified that before bringing the action he had demanded the commission from the defendant, and that the latter refused to pay the same. The complaint in the prior action was also introduced in evidence.

In substance, the foregoing is all the evidence that was produced. When the plaintiff rested, defendant's counsel moved the court to require plaintiff to elect on which "cause of action" he would rely for a recovery. Plaintiff's counsel objected to this, but was compelled to elect, and did elect to stand upon what is termed the second cause of action in the complaint. When counsel had elected to stand on the second cause of action, counsel for defendant moved for non-suit, upon the ground that it was made to appear that the cause of action upon which plaintiff had elected to stand was barred by the statute of limitations. Counsel for defendant contended, and now contends, that the second cause of action in the complaint was not saved by the prior action, for the reason that it is a separate and distinct cause of action, and

is different in its nature and legal effect from the cause of action which was set forth in the prior action.

We have a statute (Comp. Laws 1907, section 2893), which, in effect, provides that if an action is commenced in due time, and the plaintiff "fail in said action or upon a cause of action otherwise than upon the merits," and the time within which an action can be commenced has expired, the plaintiff may, nevertheless, bring a new action within one year after the failure of his action. The allegations of the complaint in the prior action are substantially the same as those contained in what is called the first cause of action in the present complaint. The prior action failed otherwise than upon the merits for the reason that the court sustained a motion for non-suit. Under our statute the reason for which a motion for non-suit may be granted is not material. Plaintiff's counsel insists that the court erred in compelling an election, in sustaining the motion for non-suit, and in entering judgment dismissing the complaint.

We are of the opinion that all three assignments are well founded. If anything was attempted to be settled by the adoption of code pleading, it was to do away with the practice of separating a single transaction into several different causes of action; that is, if there is but one promise, agreement, obligation, or imposed duty, etc., then, under the Code, there is, and can be, but one primary right on the part of the plaintiff, one primary duty on the part of the defendant, and one delict, and these three combined constitute the cause of action. The facts constituting the right, the duty, and the delict, when supplemented by the amount or extent of the injury or damages claimed, are required to be stated in clear and concise language, and only the operative facts, as distinguished from the evidentiary facts and conclusions, must be stated. The pleader is not required to follow any particular form or special theory in stating the facts, and, if the facts stated entitle the plaintiff to any relief under the substantive law, then he has stated what is termed a good cause of action, and the court must enter judgment in his favor so far as any attack upon the substantial sufficiency of the pleading is concerned. It is,

however, also well settled that in case there is but one right of recovery, but there is, nevertheless, substantial doubt in the mind of the pleader with regard to whether he will be entitled to judgment "upon one ground or upon another," or where it is uncertain just what the evidence which is in the possession and under the control of his adversary may develop, the pleader may, nevertheless, state the facts constituting his right of recovery in different ways. This, under the code system, is denominated a "duplicate statement of one right of action," and, by some writers and courts, the dual statements are still denominated separate causes of action. To call such statements different causes of action, to our minds, is, however, illogical, not well considered, and is contrary to the true spirit of the Code, since one right of recovery, under the Code, is but a single cause of action. It is, however, not very material what a duplicate statement of but one right of recovery is called so long as the right to make such statement and the right of recovery are not curtailed or denied, as was done in the case at bar. This court is firmly committed to the doctrine respecting the right of making duplicate statements. In *Oberndorfer* v. *Moyer*, 30 Utah 325; 84 Pac. 1102, the doctrine is stated in the headnote in the following words:

"Where a complaint contains two counts, one on an open account and the other on an account stated, for the same cause of action, a motion to elect between the counts was properly denied; the rule being that when a plaintiff has * * * a single cause of action, and there is some uncertainty as to which he will be able to establish, he may set forth his claim in different counts so as to include every ground he may have for recovery."

In addition to the cases there cited, see *Willard* v. *Carrigan*, 8 Ariz. 70; 68 Pac. 538; *Birdseye* v. *Smith*, 32 Barb. (N. Y.) 217; *Rucker* v. *Hall*, 105 Cal. 425; 38 Pac. 962; *Sussdorff* v. *Schmidt*, 55 N. Y. 319; *Clark* v. *Allen*, 125 Cal. 276; 57 Pac. 985; Phillips on Code Pleading, section 207.

If, therefore, a pleader may make a duplicate statement of his right to recover judgment, it is a plain and palpable

invasion, and may be a denial, of the right to require him to elect upon which statement he will stand. Instances where duplicate statements are required rarely arise, but the fact that such is the case should not affect the right to make them when the occasion arises. The complaint, under such circumstances, must be considered in its entirety, and the evidence adduced must be applied to the whole pleading, and the court must grant such relief as the pleadings support and the evidence justifies. In this case the court, however, erred in compelling an election for another reason.

In truth and in fact the allegations contained in the so-called first cause of action were sufficient to admit all the evidence that was produced and offered by the plaintiff. That such is the law is conclusively settled by **4, 5, 6** what is said in *Casady* v. *Casady*, 31 Utah 394; 88 Pac. 32. The contention that because the plaintiff alleged in the so-called first cause of action that the defendant "employed the plaintiff to sell for defendant said mining property, and agreed to pay plaintiff a commission of ten per cent.," and that in the so-called second cause of action he alleged that the "defendant employed the plaintiff to assist the defendant in selling the mining properties,  *  *  *  and the defendant agreed to pay plaintiff for said services ten per cent. of the price for which said property might be sold," thereby the plaintiff relied upon an express promise to pay a commission in the first and upon an implied one in the second cause of action, is, in our judgment, without any merit whatever. We confess our utter inability to understand why all that the plaintiff testified to was agreed upon could not properly be included in one agreement. We are not aware of any law which prevents parties from incorporating into one agreement as many conditions and promises as they may desire, and, so far as we know, there is no rule of practice or procedure that denies them the right to declare upon and enforce all of the conditions contained in such agreement in one cause of action. Of course, if the conditions should be so repugnant as to destroy each other they might not be enforceable. There are, however, no repugnant provisions in the agreement in question here. The defendant certainly

could agree to compensate the plaintiff for any services he
might render in finding a purchaser for the property. It
would seem that, under the agreement as pleaded and testi-
fied to by the plaintiff, the defendant purposely left open the
question of price and terms until some one who was willing to
purchase for some satisfactory price and terms should be
found. The plaintiff might then offer to sell the property to
some one at a price and upon terms to be ratified by the de-
fendant, or the purchaser might directly deal with the de-
fendant. In either event, under the terms of the agreement,
the plaintiff would be entitled to compensation, and it is
wholly immaterial whether it is termed a commission or
compensation. All of the foregoing facts are sufficiently
pleaded in the so-called first cause of action, and such was
likewise the case in the second cause of action. In fact,
there was but one agreement and one cause of action set
forth in the complaint, and, while a duplicate statement of
the same right of action was attempted, the facts and circum-
stances of this case neither authorized nor required a dupli-
cate statement. It is therefore quite clear that, as the evi-
dence now stands, all of which is without conflict in fact, is
conceded to be true by the motion, the plaintiff is entitled to
findings and judgment in his favor upon the so-called first
cause of action. That such is the law the authorities leave
no room for doubt. See *Hoadley* v. *Savings Bank,* 71 Conn.
599; 42 Atl. 667; 44 L. R. A. 321, where, in a note, the cases
upon the subject are collated by the annotator. See, also, as
bearing upon the question, *Ralston* v. *Kohl's Adm'r,* 30 Ohio
St. 92; *Rucker* v. *Hall, supra; Sussdorf* v. *Schmidt, supra;
Clark* v. *Allen, supra.* This would, however, also be true
even though plaintiff were limited to the allegations of the
so-called second cause of action, since, in legal effect, there
is no substantial difference between the two so-called causes
of action. From this it also follows that the cause of action
is not barred, as was held by the court. There is no con-
tention that, upon the face of the pleadings at least, the
prior action was not commenced in time, nor that the present
one was not commenced within the time required by the
statute we have referred to.

The court, therefore, erred in requiring the plaintiff to elect; in holding that the alleged causes of action contained separate and distinct rights of action; that there was a variance between the allegations in the so-called first cause of action and the evidence adduced; and in holding that, by reason of the election, plaintiff's right to recover was barred. The judgment is reversed, and the cause remanded to the district court of Salt Lake County with directions to grant a new trial, and to proceed with the case in accordance with the views herein expressed. Appellant to recover costs.

McCARTY, C. J., and STRAUP, J., concurring.