## BADERTSCHER v. INDEPENDENT ICE CO. et al.

No. 3336. Decided September 5, 1919. (184 Pac. 181.) On Application for Rehearing, October 9, 1919.

1. APPEAL AND ERROR—JOINT TORT-FEASOR DISMISSED FROM CASE NOT ENTITLED TO NOTICE OF APPEAL. Where plaintiff sued two as joint tort-feasors, and the court dismissed the action as to one defendant, *held* that on appeal by the other defendant, who was cast below, the defendant as to whom the case was dismissed was not an adverse party on whom notice of appeal must be served.[1] (Page 103.)

2. APPEAL AND ERROR—JOINT TORT-FEASOR DISMISSED FROM CASE NOT ENTITLED TO NOTICE OF APPEAL. Where an action against two joint tort-feasors was dismissed against one, *held* that, on appeal by the remaining defendant from an adverse judgment, the one as to whom action was dismissed was not an adverse party on whom notice of appeal must be served, on the theory that it was interested in the appeal because under Comp. Laws 1917, section 6484, a party who fails in an action otherwise than upon the merits may commence a new action within one year after reversal or failure. (Page 105.)

3. APPEAL AND ERROR—ON DISMISSAL OF JOINT TORT-FEASOR PLAINTIFF ONLY COULD ALLEGE ERROR. Where an action against two joint tort-feasors was dismissed as to one, *held* that only the plaintiff in the action could complain of the ruling. (Page 107.)

4. APPEAL AND ERROR—QUESTION AS TO DISMISSAL OF JOINT TORT-

[1] *Groot* v. *R. R. Co.*, 34 Utah, 152, 96 Pac. 1019; *Griffin* v. *Southern Pac. Co.*, 31 Utah, 296, 87 Pac. 1091; *Allen* v. *Garner*, 45 Utah, 39, 143 Pac. 228; *Langton L. & C. Co.* v. *Peery*, 48 Utah, 112, 159 Pac. 49.

Appeal from Third District.

FEASOR REVIEWABLE ONLY ON APPEAL BY PLAINTIFF. Where an action against two joint tort-feasors was dismissed as to one, *held* that the ruling cannot be reviewed without appealing from the judgment immediately following the ruling. (Page 107.)

5. APPEAL AND ERROR—RESERVATION OF EXCEPTION NECESSARY ON APPEAL FROM NONSUIT. The sustaining of a motion by one defendant for nonsuit cannot be reviewed on appeal by the remaining defendant from an adverse judgment, where the appealing defendant saved no exception to the ruling.[2] (Page 107.)

6. MASTER AND SERVANT—EMPLOYMENT OF SERVANT OF ANOTHER LIABLE FOR NEGLIGENCE. One may be in the general service of another, and nevertheless with respect to particular service be deemed the servant of a third person, so as to render the latter liable for the servant's negligence. (Page 111.)

7. MASTER AND SERVANT—HIRER OF TEAMS AND TEAMSTERS OF ANOTHER LIABLE FOR TEAMSTERS' NEGLIGENCE. Where a coal company hired teams and teamsters from an ice company, the coal company having the right to direct their movements, such teamsters must, for the purpose of determining liability for their negligent acts in delivering coal, be deemed the servants of the coal company. (Page 111.)

GIDEON, J., dissenting.

Appeal from District Court, Third District, Salt Lake County; *J. Louis Brown,* Judge.

Action by Godfrey J. Badertscher against the Independent Ice Company, a corporation, and Wasatch Coal Company, a corporation. From a judgment against the last-named defendant, the case having been dismissed as to the first, the latter defendant appeals.

AFFIRMED.

*G. A. Iverson* and *P. G. Ellis,* both of Salt Lake City, for appellants.

_____

[2] *Stewart* v. *R. R.,* 39 Utah, 375, 117 Pac. 465.

*Geo. G. Armstrong, W. E. Rydalch* and *Ed. McGurrin,* all of Salt Lake City, for respondent.

FRICK, J.

Plaintiff commenced this action in the district court of Salt Lake county against the Independent Ice Company, a corporation, hereinafter called ice company, and against the Wasatch Coal Company, also a corporation, hereinafter styled coal company, to recover damages for personal injuries which he claimed to have suffered through the alleged joint negligence of the two companies.

Upon the trial of the case, after the plaintiff had introduced his evidence, the two companies filed separate motions for non-suits upon the ground that the evidence, for the reasons stated in the motions, was insufficient to take the case to the jury. The district court granted the motion of the ice company and denied that of the coal company. The case was accordingly dismissed as against the ice company, and the trial proceeded as against the coal company alone. The jury, under the instructions of the court, which are not complained of here, found a verdict in favor of the plaintiff against the coal company. Judgment was duly entered on the verdict, from which the coal company appeals, and assigns a number of errors, which we shall hereinafter consider.

In taking the appeal from the judgment against it the coal company did not serve the ice company with notice of the appeal. The plaintiff has filed a motion to dismiss the coal company's appeal upon the ground that the ice company is an adverse party, and hence a necessary party to the appeal, and, not having been served with notice of the appeal, he contends this court cannot hear the appeal for want of jurisdiction. In view that the plaintiff sued the two companies as joint wrongdoers, their precise relationship for the purposes of this motion is quite immaterial. The question, and the only question, to be determined upon the motion, is, Is the ice company an adverse, and hence a necessary, party to this appeal? In other words, would its interests, from a legal

point of view, be affected in case the judgment against the coal company were modified or reversed? The fact that the district court, upon the evidence produced against the ice company, as a matter of law found that it was not connected with the alleged wrong or tort, and upon that ground entered a judgment dismissing the action against it, which judgment is in full force and effect, should conclusively dispose of this motion against the plaintiff's contentions. If, as a matter of law, the plaintiff has no cause of action against the ice company, in what way can that company be interested in this appeal, which is from a judgment against the coal company alone, and which appeal is from that judgment only and from no other? I confess my utter inability to understand how the ice company is any longer connected with this case. Why is not the judgment of dismissal upon the grounds stated, while not appealed from, for the purposes of this appeal just as conclusive as a judgment upon the merits in defendant's favor, if not appealed from, would be? It would seem that upon a proposition so elementary no authority should be required. The following cases are, however, squarely in point: *Bliss* v. *Grayson*, 24 Nev. 422, 56 Pac. 231; *O'Keefe* v. *Omlie*, 17 N. D. 404, 117 N. W. 353; *State* v. *Mining Co.*, 169 Mo. App. 79, 154 S. W. 168. See, also, *Tucker* v. *Carlson*, 113 Iowa, 449, 85 N. W. 901.

In *Bliss* v. *Grayson*, supra, the court said: "Notice of appeal by a defendant need not be served on defendants who were dismissed from the action before judgment." *O'Keefe* v. *Omlie*, supra, is precisely to the same effect. As a matter of course such must be the case. When the judgment of dismissal was entered, which is still in full force and effect, the ice company went out of the case, and thereafter its legal relation to the defendant coal company was precisely the same as though it never had been a party at all. True, the plaintiff might have appealed from the judgment of dismissal, and might thus have continued the ice company in the case; but he did not do so, and therefore the judgment of dismissal stands. The plaintiff was, however, the only one who could

have complained of that judgment. The coal company, being sued as a joint wrongdoer, cannot legally complain because the action was dismissed against the ice company before judgment. The coal company, being a joint wrongdoer, is liable for the whole damage, and has no right of contribution against its joint wrongdoer, and hence cannot complain if the other joint wrongdoer is dismissed from the action. 1 Cooley on Torts (3d Ed.) 254; *Groot* v. *R. R. Co.*, 34 Utah, 152, 96 Pac. 1019; *City of Covington* v. *Whitney* (Ky.) 96 S. W. 907. Indeed, the coal company had no right of appeal from the judgment of dismissal. That is squarely decided in the case of *City of Covington* v. *Whitney,* supra, and is clearly the logic of the decision in *Groof* v. *R. R. Co.* It is, however, contended that the cases of *Griffin* v. *So. Pac. Co.*, 31 Utah, 296, 87 Pac. 1091, *Allen* v. *Garner*, 45 Utah, 39, 143 Pac. 228, and other cases there cited, hold to the contrary. There is no merit to the contention. In all of those cases there were joint judgments, and the party upon whom service of notice was omitted would have been affected by the modification or reversal of the judgment. The distinction between those cases and the one at bar is stated in the case of *Langton L. & C. Co.* v. *Peery,* 48, Utah, 112, 159 Pac. 49, in the following words:

"It will be observed, however, that the test whether a party below is a necessary party to an appeal, as laid down in that case [*Allen* v. *Garner,* 45 Utah, 39, 143 Pac. 228], as in all other cases emanating from this court, is that the omitted party must be affected by a modification or reversal of the judgment appealed from. If a party would not be affected he is not a necessary party, and hence to omit to serve him with notice of appeal. * * * is not fatal to the appeal."

All of the Utah cases are clearly distinguishable from the case at bar, and hence have no controlling influence here.

It is, however, further contended that inasmuch as, under our statute (Comp. Laws 1917, section 6484), a party who fails in an action otherwise than upon the merits "may commence a new action within one year after the reversal or failure" of the original action, that for that reason the ice company is interested in this appeal and should have been

served with notice.  That contention entirely overlooks or ignores the real purport of the statute.  What the statute permits is a "new action" which is entirely independent of the one that failed.  The original action is ended, so far as the defendant against whom it was dismissed is concerned, precisely the same as though no new action could be commenced.  If it be true that in this case the ice company must be served with notice because the new action could be commenced against it, if commenced within the time limited by the statute, then it is also true that in this state the joint wrongdoers have a right to be served with notice of appeal, whether parties to the action or not, for the simple reason that a new action can be commenced at any time against them, if commenced within the statutory period of limitations, so long as the damages remain unsatisfied.

But it is urged that the ice company is interested in maintaining the judgment against the coal company and in having it paid by that company.  While that may be true, it would be no less true if the ice company had never been made a party to the action.  It is true precisely the same so far as the driver of the wagon is concerned, who., because of his negligence, caused plaintiff's injury of which he here complains.  So long as the damages remain unsatisfied the driver of the wagon may be sued, if sued within the statutory period of limitations, and hence he is also interested in having the coal company pay the judgment.  No one would, however, seriously contend that he could come into this court and insist upon an affirmance of the judgment against the coal company.  The legal status of the ice company, in view of the entry of the judgment of dismissal, is, however, precisely the same as that of the driver of the wagon.  True, it was made a party to the action, but the district court found and adjudged as a matter of law that it was not responsible for the wrong, and entered judgment dismissing the action against it.  The ice company, therefore, is no more a party to the action than is the driver of the wagon, and for that reason has no right to be heard on the coal company's appeal any more than the driver would have.  The case of *Hum-*

*phreys* v. *Hunt,* 9 Okl. 196, 59 Pac. 971, is relied on as holding to a contrary doctrine. While it is true that in that case the Supreme Court of Oklahoma has apparently arrived at a different conclusion, yet the writer confesses his utter inability to understand the legal principle upon which the decision in that case rests. Another case is also relied on, namely, *Bullock* v. *Taylor,* 112 Cal. 147, 44 Pac. 457. That case is a case of joint contractual liability, and, in addition to that, it seems from that case that an appeal by any party to the action brings up the whole cause for review. Such is not the case in this jurisdiction. Here there is no appeal except from a final judgment. A party, in order to be entitled to have rulings occurring during the trial reviewed, must appeal from the final judgment. An appeal may also be taken from any judgment, if there be more than one in the case, and from any independent part of a judgment. In this case the judgment of dismissal in favor of the ice company is clearly a separate and independent judgment, has no connection with the judgment against the coal company, and an appeal by the coal company from the judgment against it in no way affects the judgment of dismissal. Besides, as we have seen, the plaintiff is the only one who could have assailed the judgment against the coal company by an appeal, and he did not do so. Neither the case from Oklahoma nor the one from California has any bearing upon this motion. Moreover, this court, in a number of unreported cases, refused to dismiss appeals upon the ground that a joint wrongdoer, against whom the action was dismissed in the court below, was not served with notice of appeal to this court. The rulings in those cases are manifestly sound, and should be adhered to.

Finally, it is contended that, inasmuch as the coal company has assigned the ruling of the district court in sustaining the ice company's motion for a nonsuit as error, for that reason it should have been served with notice. I have already pointed out that the coal company cannot legally complain of that ruling, and that in no event could the ruling be reviewed without appealing from the judgment following

the ruling.  Both of the foregoing reasons are conclu-     **3-5**
sive against the motion.  It would be strange doctrine,
however, because a party asks too much, that, for that reason,
the court is ousted of jurisdiction.  If that doctrine prevailed
this court would have to be abolished for want of something to
do.  But even if the coal company had the right to complain
of the ruling of the district court in sustaining the ice com-
pany's motion for a nonsuit, yet this court would be powerless
to review the ruling, because the coal company saved no ex-
ception to the ruling.  Without such an exception we cannot
review the ruling on the motion for a nonsuit.  *Stewart* v. *R.
R.*, 39 Utah, 375, 117 Pac. 465.  The motion to dismiss the ap-
peal must, therefore, be denied.

This brings us to the merits of the appeal.

Plaintiff's evidence, which is material here, at the time the
coal company interposed its motion for a nonsuit, was, in
substance, as follows:  The coal company was engaged in the
retail coal business at Salt Lake City.  The ice company was
engaged in the ice business.  During the winter season the
ice company had a surplus of men and teams, while the coal
company did not always have sufficient men and teams to
deliver coal to its customers as ordered by them.  The coal
company applied to the ice company for teams and men, and
for the running gears of wagons.  Whenever the coal com-
pany desired men and teams it would apply to the ice com-
pany, and the ice company would then order some of the team-
sters in its employ to report to the coal company with teams
and the running gears of wagons.  The coal company fur-
nished the wagon boxes in which the coal was hauled, on
which boxes the name of the coal company was printed in
large letters.  After the box was placed on the running gear
of a wagon, the teamster with the team and wagon would re-
port to the foreman of the coal company at its coal yard, and
the foreman would then direct the teamster where to load the
coal and to whom to deliver the same.  If the coal was de-
livered C. O. D. the teamster would also collect the price of
the coal, and in addition thereto the additional cost of de
livery, which in this case was one dollar per ton.  When the

coal was to be delivered C. O. D., and the customer did not pay therefor, the coal was taken back to the coal company's yard by the teamster. The extra amount that was collected by the coal company for delivering the coal to its customers, in this instance one dollar per ton, was divided between the ice company and its teamsters. The ice company, however, settled with the teamsters periodically. The relationship of the coal company and the ice company and its teamsters was that the ice company hired the teamsters, furnished the teams and running gears of the wagons; the coal company furnished the coal and the wagon boxes and the customers to whom the coal was to be delivered; and the teamsters did the work incident to the delivery of the coal, and in case the coal was delivered C. O. D. collected the price of the coal plus the cost of delivering, in this instance, one dollar per ton, and would account to the coal company for the price of the coal. At the time the motion for a nonsuit was interposed it was uncertain whether the teamster whose alleged negligence caused plaintiff's injury was one of the ice company's teamsters or whether he was hired by the coal company. The team and wagon-gear, however, belonged to the ice company, while the wagon box belonged to the coal company. We shall consider this case, however, as though the teamster was employed by the ice company, was paid by it from time to time, and was sent to the coal company to deliver coal as hereinbefore stated.

On the evening of November 2, 1917, one of the teamsters aforesaid undertook to deliver a wagon load of coal to one of the coal company's customers in the southeastern part of Salt Lake City. In attempting to deliver the coal the team was unable to pull the load of coal over the sidewalk, and the teamster then unhitched his team, leaving the wagon tongue to protrude entirely across the sidewalk about a foot above the walk. The tongue was left in that condition, without any sign or warning of any kind, all night. Early the next morning, before daylight, the plaintiff, being wholly ignorant of the condition of the wagon tongue, in delivering the morning papers, while riding on his bicycle, ran against the wagon tongue, and was thrown from his bicycle and was severely

injured.     The coal company unloaded the coal from the wagon some time next day.   The plaintiff made the necessary proof concerning his injuries, damages, etc., and rested.   Both the ice company and the coal company then interposed separate motions for a nonsuit.   The motion of the ice company was granted, while that of the coal company was denied, and the case proceeded to judgment against it.   The appeal is from that judgment.

The principal error assigned, in fact the only one we need to specially consider, is that the court erred in denying defendant's motion for a nonsuit, and in submitting the case to the jury on the facts, upon the ground that the driver of the wagon was not the agent or servant of the coal company, but was in fact and in law the agent or servant of the ice company.   We need not pause to consider the relationship of the ice company to the transaction in question.   It is sufficient for us to know that the ice company was dismissed from the case as hereinbefore stated, and that the coal company cannot legally complain of the court's ruling in dismissing the ice company from the case.   The only question, therefore, that concerns us is, what is the relationship of the coal company and the driver of the wagon and how is it related to the transaction in question?   Can we say as a matter of law that it should not be held liable for the negligence of the driver in leaving the wagon tongue in the condition stated, and thus endangering the safety of any person who might attempt to pass over the sidewalk in the nighttime?   It is not always easy to determine the precise relationship of the parties under circumstances like those in the case at bar.   The courts have at times found it difficult to determine which one of the two alleged employers is liable for the negligent acts of commission or omission of a particular employé.   Mr. Justice MOODY states the principle which applies to cases like those we have just referred to so clearly and so admirably that we take the liberty of quoting his statement, which is found in the case of *Standard Oil Co.* v. *Anderson,* 212 U. S. at page 220, 29 Sup. Ct. at page 253 (53 L. Ed. 480).  The Justice says:

Badertscher v. Independent Ice Co. et al., 55 Utah 100.

"One who employs a servant to do his work is answerable to strangers for the negligent acts or omissions of the servant committed in the course of the service. The plaintiff rests his right to recover upon this rule of law which, though of comparatively modern origin, has come to be elementary. But, however, clear the rule may be, its application to the infinitely varied affairs of life is not always easy, because the facts which place a given case within or without the rule cannot always be ascertained with precision. The servant himself is, of course, liable for the consequences of his own carelessness. But when, as is so frequently the case, an attempt is made to impose upon the master the liability for the consequences, it sometimes becomes necessary to inquire who was the master at the very time of the negligent act or omission. One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation."

The facts and conclusion of the court are so accurately reflected in the third headnote to the case of *Philadelphia & R. C. & I. Co.* v. *Barrie*, 179 Fed. 50, 102 C. C. A. 618, as to justify the adoption of that headnote as part of this opinion, which we do. The headnote reads as follows:

"Where defendant, a coal dealer, in delivering coal from its yards to customers, hired from another dealer a team and a driver in the latter's general employ, paying a stipulated sum per hour for their services, and having full control and direction of the work and the method of its performance, the driver, while engaged in such work, was a servant of defendant, which was liable for an injury to a third person caused by the driver's negligence in its performance."

The doctrine announced in the Barrie Case is also fully sustained in 1 Labatt, Master and Servant (2d Ed.) sections 52-57, where the author, in referring to the decisions in which the relationship between a servant who by his employer is permitted to work for another person is discussed, approves and adopts the language of Mr. Chief Justice Cockburn in *Rourke* v. *White Moss Colliery Co.*, L. R. 2 C, P. Div. 205, namely:

" 'When one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to

whom he is lent, although he remains the general servant of the person who lent him.'"

The author concludes:

"In other words, the servant of A. may, for a particular purpose or on a particular occasion, be the servant of B., though he continues to be the general servant of A. and is paid by him for his work."

To the same effect are *Scribner's Case*, 231 Mass. 132, 120 N. E. 350 and Moll, Independent Contractors and Employers Liability, Section 7.

Plaintiff's counsel has also called our attention to a recent article in 89 Central Law Journal, pages 97-103, in which the doctrine is ably discussed, and where a number of cases are cited and distinguished. The writer · of the article makes it quite clear that the doctrine quoted from Labatt is the one that is supported by the best-considered cases. We desire to express our appreciation to counsel for having directed our attention to the article while the case remained undisposed of.

The following cases also fully sustain the conclusion reached in the *Barrie Case* from which we have quoted: *Kolnitsky* v. *Matthews*, 64 Misc. Rep. 167, 118 N. Y. Supp. 366, *Weber* v. *Becker* (Sup.) 136 N. Y. Supp. 119, and *Glover* v. *Richardson & Elmer Co.*, 64 Wash. 403, 116 Pac. 861. There are a number of cases cited in the foregoing cases, where the same result was reached under similar circumstances, to which we need not specially refer.

The law as laid down in the foregoing cases fully justifies us in sustaining the ruling of the trial court in denying the motion of the coal company for a nonsuit. Counsel for the coal company has however, cited and relies upon the following, among other, cases: *Driscoll* v. *Towle*, 181 Mass. 416, 63 N. E. 922; *Foster* v. *Wadsworth-Howland Co.*, 168 Ill. 514, 48 N. E. 163; *Chicago, etc., Co.* v. *Campbell*, 116 Ill. App. 322; *Cohen* v. *Western Elec. Co.*, 50 Misc. Rep. 660, 99 N. Y. Supp. 525; *Quinn* v. *Complete Elec. Const. Co.* (C. C.) 46 Fed. 506; *Joslin* v. *Grand Rapids Ice Co.*, 50 Mich. 516, 15 N. W. 887, 45 Am. Rep. 54; *Kellogg* v. *Church Charity Foundation*, 203 N. Y. 191, 96 N. E. 406, 38 L. R. A. (N. S.) 481, Ann. Cas.

1913A, 883; *Ash* v. *Century Lumber Co.*, 153 Iowa, 523, 133 N. W. 888, 38 L. R. A. (N. S.) 973.

While all of the foregoing cases have features which in some respects are similar to those in the case at bar, yet, upon a close analysis of the cases, it will be found that the case at bar in many respects is distinguishable from those cases, and that the controlling features of this case are like those in the cases we have quoted from above.

Upon the whole record we feel constrained to hold that the district court did not err in denying the motion for a nonsuit, and that the case is not one where we can say as a matter of law that the coal company is not responsible for the negligent acts of the driver of the coal wagon in leaving it in the condition he did while in the act of delivering the coal of the coal company; while, upon the other hand, under the law as laid down in the cases we have quoted from, when applied to the facts, the jury could well find that the driver of the wagon was the agent of the coal company, and that it is responsible for his negligence.

Other errors assigned, in view of the record, are not such as require special consideration.

For the reasons stated the judgment should be, and it accordingly is, affirmed, with costs to plaintiff.

CORFMAN, C. J., and WEBER and THURMAN, JJ., concur.

GIDEON, J.

I dissent. Probably a brief review of what I understand the facts to be, as disclosed by the record, will give a better understanding of my views respecting the questions presented on this appeal.

It appears that the Wasatch Coal Company was conducting a retail coal business at Salt Lake City, Utah. At the time of the alleged accident it had no teams of its own with which to deliver coal to its customers. The Independent Ice Company was the owner of teams and wagons, and during the

summer months was engaged in selling and delivering ice. In the fall of 1917 a contract or agreement was made between the coal company and the ice company whereby the latter undertook, for an agreed sum per ton, to deliver coal for the defendant coal company to its various customers within Salt Lake City. The arrangement seems to have been that whenever the coal company desired teams it would telephone the ice company, and thereupon the ice company would send its teams, together with drivers and wagons, except the beds or boxes, to the office of the coal company, where the driver would receive directions as to the time of delivery, the amount of coal to be delivered, and the addresses to which it should be delivered. If the coal was delivered C. O. D., the drivers collected the money and returned it to the coal company. When the coal was directed to be so delivered, and the customer failed to pay, the driver would return the coal to the yards of the coal company. After the day's work the drivers would return the teams to the stables of the ice company, and would take the teams from there the following day. It also appears that the ice company employed the drivers, paid them an agreed compensation, discharged them at its pleasure, and that the coal company in no way directed or suggested the employment of any one as a driver other than if any particular driver was objectionable notice was usually given to the ice company of that fact and some other driver would be substituted. On or about November 2, 1917, one of the teams of the ice company was delivering coal for the coal company, and, as directed by the manager of that company, attempted to deliver a load of coal at an address given by said company. In attempting to pass from the street over the sidewalk to the residence where the coal was to be delivered the wagon became so mired in the dirt that the team could not pull it over the walk. Thereupon the driver unhitched the team, left the wagon tongue extending partially across the paved sidewalk, placed no lights or guards around it, and left it in that condition overnight. In the early morning following plaintiff ran over the end of the tongue, and was thrown to the pavement, and received the injuries complained of. No

officer or employé of either company, except the driver, had any knowledge of the condition in which the loaded wagon had been left until the following day.

At the conclusion of plaintiff's testimony the court granted a motion for nonsuit made by the defendant ice company. The jury returned a verdict against the coal company. That company appeals. It failed, however, to serve notice of appeal upon its codefendant, the ice company. The respondent, plaintiff below, now moves to dismiss the appeal, and urges such failure to serve notice of appeal upon the ice company as grounds therefor. That motion, in my judgment, should be granted.

The complaint charges the defendants jointly with the negligence that caused the injury. Both defendants denied the negligence as well as liability. The record in this case clearly shows that either the defendant ice company or the defendant coal company is responsible for the negligence that caused the injury. There can, in my judgment, be no question about that. The tongue of the wagon was negligently left by the driver so as to cause the injury. At that particular time the driver sustained such relationship to either the ice company or the coal company as would make one of such defendants liable for his negligent acts. There is nothing in the record tending to show that both defendants sustained such relationship to the driver as to make them both either individually or jointly liable. Admittedly the driver was in the general employ of the ice company. If it should be determined by this court that the coal company, appellant, is not liable, it would indisputably follow that the ice company would be answerable for the consequences of the driver's negligent act. Of course, the driver would be personally liable. The defendant ice company succeeded in convincing the trial court that it was not liable. That the court determined as a legal proposition upon granting the ice company's motion for nonsuit. Such was not a trial or final determination upon the merits of the ice company's liability. *Williams* v. *Nelson,* 45 Utah, 255, 145 Pac. 39. Under the provisions of Comp. Laws Utah 1917, section 6484, the plaintiff could within the time

specified in that section, institute another action against the ice company notwithstanding the granting of the nonsuit in this action. The presumption is always indulged, and rightly so, that a judgment debtor is solvent and will pay any judgment regularly rendered and entered against him. The affirmance of the judgment against the coal company and the payment of the same would be a complete defense to any action the plaintiff might thereafter prosecute against the ice company for the alleged negligent act. Notwithstanding the ruling of the district court that the ice company is not liable, and notwithstanding that if this court should affirm the judgment against the coal company and that judgment should be paid, as the ice company has a right to assume that it will be, and notwithstanding that under the admitted facts in this case that if the coal company is not liable the ice company is and can be subjected to a new action, the majority opinion is that the ice company has no interest in the appeal and is in no sense an adverse party. Such a conclusion, in my judgment, contravenes the principle or rule announced by this court in *Griffin* v. *S. P. Co.*, 31 Utah, 299, 87 Pac. 1092, where the court, speaking through Chief Justice McCarty, says:

"We are of the opinion, and so hold, that unless it affirmatively appears from the record that a party to an action would not be injuriously affected by a reversal of the case, such party must be served with notice in case an appeal is taken, otherwise this court can acquire no jurisdiction over the action except to dismiss the appeal, and thereby affirm the judgment appealed from."

In *Langton Lime & Cement Co.* v. *Peery*, 48 Utah, at page 115, 159 Pac. at page 50, the test for the determination of who are adverse parties is stated by Justice Frick in the following language:

"This court, by an unbroken line of decisions, has held that all the parties to an action who may be adversely affected by a modification or reversal of the judgment are adverse parties under our statute, and must be made parties to the appeal either as appellants or respondents."

Naturally the converse of that proposition would be true, as pointed out in the majority opinion in the quotation taken from 48 Utah, at page 112, 159 Pac. 49,

The facts in the *Griffin Case,* supra, were that the defendant railroad company and one Austin were jointly charged in the complaint with the negligence that caused the death of plaintiff's intestate. Austin was served with summons, but failed to plead or further appear in the action, and default was entered against him. The railroad company answered, and a general verdict was returned by the jury against both defendants. The railroad company appealed, but failed to serve notice upon its codefendant. This court dismissed the appeal, and assigned as one of the reasons for so doing that a reversal might injuriously affect Austin, and this court could not indulge the presumption that it would not. In the present case both defendants are jointly charged with the commission of the negligent act. During the trial the ice company had judgment in its favor by the court granting its motion for nonsuit. I confess my inability to follow the reasoning whereby the conclusion is reached that one defendant jointly charged with another, but who has judgment entered against him, is any more an interested or a necessary party than one who is also jointly charged with another with the negligent act in question, but who is successful in having a judgment entered and rendered in his favor, or that the latter thereby ceases to be an adverse party to an appeal from the judgment. Especially does that reasoning to me seem fallacious in view of the fact that under the provisions of our Code, and under the admitted facts in this record, such successful defendant would be liable to be sued in a new action for the same negligent act. In my judgment the latter is an adverse party, and is interested in having the judgment of the lower court affirmed. Such, in fact, was the holding of the Supreme Court of Oklahoma under a statute similar to ours, in *Humphrey et al.* v. *Hunt,* 9 Okl. 196, 59 Pac. 971. In that case Maggie Hunt brought action against Lewis Humphrey and eight others, including one Fred Belt, to recover damages for the death of her husband. At the trial a verdict was had and judgment entered against six of the defendants, and a verdict and judgment in favor of Belt and against plaintiff. The defendants against whom judgment had been en-

tered appealed, but did not serve notice of appeal upon Belt. The appeal was dismissed on the ground that appellants had failed to serve notice upon all the adverse parties. The court assigns as a reason for such ruling that Belt was entitled to be made a party so that he could present to the appellate court any reasons he might have why the judgment should be affirmed. No sound reason, in my judgment, is given in the prevailing opinion, nor in the authorities cited therein, why the conclusion of the Oklahoma court should not be controlling here.

A like ruling was made by the Supreme Court of California in *Bullock* v. *Taylor*, 112 Cal. 147, 44 Pac. 457. True, that action was for breach of contract against three defendants claimed to have executed the contract as partners. Nonsuit was granted as to two of the defendants and judgment was against the other. The defendant against whom judgment was rendered served notice of appeal on the plaintiff only. On the appeal one of the errors assigned was the granting of the motion for nonsuit of appellant's codefendants. The appellate court dismissed the appeal, holding that jurisdiction had not been acquired, and that the defendants who had been taken out of the case by granting the nonsuit would be adversely affected by a reversal of the judgment. I can see no difference in principle between an action of that character and the one now under consideration.

In the present case the appellant's third assignment of error is as follows:

"The court erred in granting the motion of the defendant Independence Ice Company for a nonsuit for the reason that the evidence shows that, as between the defendants Independent Ice Company and the Wasatch Coal Company, the teamster, Ed. Wesler, at the time of the accident complained of, was the servant or agent of the said Independent Ice Company and not of the Wasatch Coal Company; and for the further reason that, if there was any conflict in the evidence as to whether said teamster was at the time of the accident the servant or agent of either of said defendants, that question should have been submitted to the jury."

If there ever was any question as to the Independent Ice Company being an adverse party, the foregoing assignment

Badertscher v. Independent Ice Co. et al., 55 Utah 100.

would seem to be sufficient answer to the contention.  At least it is conclusive that the appellant considered that the court erred in granting the ice company's motion for nonsuit, and he assigns it as a proper subject for review by this court.

It is insisted that the ice company is in no worse condition by a reversal of this judgment than it would have been if it had never been made a party to the action.  Granting that that may be true, nevertheless the ice company was made a party, and as such I think is entitled to have its rights determined, if possible, in this suit, and not be harrassed by new proceedings.  It is the admitted policy and the duty of the courts to so determine the rights of parties brought into litigation as to avoid the expense and delay of numerous actions.

I am making no defense or argument in support of the ruling or principal announced in the *Griffin Case,* nor of the statute upon which that rule is predicated.  The Constitution of this state guarantees the right of appeal to this court from judgment of the district courts to all litigants, and the Legislature might well have, in my judgment, in prescribing the method of exercising that constitutional right, made such provision that, when a party appealing has neglected to serve all adverse parties, such adverse parties could thereafter, by order of court, be brought into this court, upon it being made to appear that such parties are necessary to the jurisdiction of this court.  But so long as the rule or principle announced in the *Griffin Case* is to stand as the established law or rule of procedure in that class of cases, I see no reason why a different rule should be laid down in cases like the one under consideration.  In my judgment, there is no difference in principle.

I think the motion to dismiss the appeal should be granted.

Passing now to a consideration of the merits of the case. I am unable to concur in the affirmance of the judgment.  Accepting the general principle expressed in the quotation from 212 U. S. in the prevailing opinion as the true rule to govern in determining when one who is in the general employment of another may, by arrangement made between such employer

and a third person, cease to be the employé of the general employer and for the time being become the servant of the third person, I cannot, in the application of that principle to the facts in the instant case, concur in the conclusions reached. In the application of that general principle announced in the case referred to, after discussing the test for determining whether the relationship of master and servant existed between the servant and the general employer, or between the servant and the one to whom he had been let or hired at the time of the injury, the Supreme Court of the United States concluded the discussion thus:

"To determine whether a given case falls within the one class or the other, we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking."

The facts in that case were that the plaintiff was employed by a master stevedore, who was under contract to load a ship belonging to the defendant with oil. The plaintiff was working within the hold of the ship, where he was injured without fault on his part by being struck by a draft or load of cases containing oil which was unexpectedly lowered into the hold. The motive power was furnished by a steam winch or drum, and the hoisting and lowering were accomplished by means of a tackle, guy rope, and hoisting rope. The tackle and ropes were furnished and rigged by the stevedore, and the winch and drum were owned by the defendant and placed on its dock, some fifty feet distant from the hatch. All the work of loading was done by the employés of the stevedore, except the operation of the winch, which was done by a winchman in the general employ of the defendant. It appears that the operator of the winch received signals from the employés of the stevedore when to raise and lower the tanks containing oil, and that he neglected to observe or follow such signals, thereby lowering the tanks out of time and causing the injury. Applying the general principle stated in the quotation

to the facts of that case, the Supreme Court determined that such facts did not warrant the conclusion that the relationship of master and servant did not exist between the defendant and the operator of the winch. It is pointed out that the winchman was under the general employment of the defendant, who selected him, paid his wages, and had the right to discharge him for incompetency, misconduct, or for any other reason; that, before such legal relationship of master and servant could be terminated, it was necessary that a new like relationship be created between the winchman and the stevedore.

The facts presented by the record in the case at bar, as I view them, show that the driver, at the particular time of leaving the tongue of the wagon so as to cause the injury, was doing the work of the ice company. It will be remembered that the contract between the ice company and the coal company was that the ice company should deliver coal with its teams and wagons at an agreed price. Of necessity, in the performance of that work, the amount of coal, as well as where and to whom it should be delivered, must be determined and directed by the officers of the coal company, otherwise the ice company would have no information or direction how to carry out and complete its part of the contract. The method or manner of delivery seems to have been under the control of the ice company or its employés.

The Supreme Court of Massachusetts, in *Driscoll* v. *Towle,* 181 Mass. at page 419, 63 N. E. at page 923, in considering a case where the facts are almost identical with the facts here, and in discussing this particular question said:

"In case like the present there is a general consensus of authority that, although a driver may be ordered by those who have dealt with his master to go to this place or that, to take this or that burden, to hurry or to take his time, nevertheless in respect to the manner of his driving and the control of his horse he remains subject to no orders but those of the man who pays him. Therefore he can make no one else liable if he negligently runs a person down in the street."

There is nothing in the record to show that the officers of the coal company in any way controlled, directed, or sug-

gested to the driver employed by the ice company the method to be employed in delivering the coal, or how or in what manner the premises of the person to whom the coal was to be delivered should be entered.

The general principle quoted from the Supreme Court of the United States is made the basis of practically all decisions rendered by the courts of this country since its announcement. In the application of that general principle I haye found no authority, where the facts are similar to the facts here, where it has been held that the driver or the party causing the injury was the employé of the one to whom he was let or hired, unless it be the case of *Philadelphia & R. Coal & Iron Co.* v. *Barrie,* 179 Fed. 50, 102 C. C. A. 618, Circuit Judge Sanborn, in a concurring opinion in that case, said:

"The question in this case is whether the Coal & Iron Company or Martin was the master of the driver, McQuistran, in the latter's performance of the specific act of protecting pedestrians from stepping into the coal hole in the sidewalk while he was unloading the coal into it. When a master who has and exercises the power to hire and discharge his servant lets him and a team to a hirer, to go where and do such known work as the hirer directs, the legal presumption is that, although the hirer directs the servant where to go and what to carry or haul or do, the driver still remains subject to the control of his general employer in the method of his performance of the work to which the hirer assigns him, and the hirer is not liable, in the absence of an agreement to the contrary for the negligence of the servant in the method or manner of his performance of his service. (Citing numerous cases.)

Judge Sanborn, however, concurred in the order holding the defendant liable on the ground that the defendant's local manager testified as follows:

"Q. And the method of delivery is under your orders? A. Yes, sir. Q. Place, the time, the amount, and all, is under your orders? A. I have said so two or three times."

As I have pointed out, there is nothing in the record tending to indicate that the method of delivering the coal in the case now under consideration was under the control of the coal company. To that extent, at least, the facts here differ from the facts in the case reported in 179 Fed. There is practically no dispute as to what the facts are in this case. There

was, therefore, no question to be submitted to the jury, as some of the cases hold should be done, as to whose employé the driver was at the time of the negligent act committed by him.   It thus became a question of law, under the admitted or proven facts, for the court to determine whose servant the driver was at that particular time.   The following cases, in my judgment, support what I here contend for:   *Foster* v. *Wadsworth-Howland Co.*, 168 Ill. 514, 48 N. E. 163; *Quinn* v. *Complete Elec. Const. Co.* (C. C.) 46 Fed. 506; *Kellogg* v. *Church Charily Foundation*, 203 N. Y. 191, 96 N. E. 406, 38 L. R. A. (N. S.) 481, Ann. Cas. 1913A, 883; *Burns* v. *Michigan Paint Co.*, 152 Mich. 613, 116 N. W. 182, 16 L. R. A. (N. S.) 816; *Singer* v. *McDermott*, 30 Misc. Rcp. 738, 62 N. Y. Supp. 1086.   See, also, 1 Labatt, Mast. & Serv. (2d Ed.) section 54.

A careful consideration of the facts of this case and the application of the law thereto, as I understand the law, convinces me that at the time of the act complained of the driver was the servant of the ice company, and that therefore the coal company should not be held liable in this case.

For the foregoing reasons I dissent from the affirmance of the judgment, unless such affirmance shall be based upon the dismissal of the appeal.

### ON APPLICATION FOR REHEARING.

FRICK, J.

Counsel for appellant has filed a petition for a rehearing. He does not contend that we have overlooked or omitted anything, but he most urgently insists that our conclusion is contrary to law.   When court and counsel disagree respecting the law that controls a case, counsel, as a matter of course, always insist that their views should have prevailed.   For that reason, if for no other, nothing is ordinarily gained by a reconsideration of the legal propositions already decided.   In this instance, however, counsel in his petition for a rehearing vigorously insists that the cases we have cited in support of

our conclusion are not applicable to the facts of this case. We doubt not counsel for appellant has convinced himself that such is the case, and is therefore justified in making the assertion. The majority of the court, however, is unable to arrive at such a conclusion. Without attempting to restate the facts, it must suffice to say that there is and can be no doubt whatever that the driver of the coal wagon in delivering the coal was under the sole direction and control of the coal company. He took the team and running gears of a wagon belonging to the ice company to the coal yard of the coal company for the express purpose of delivering the coal to such places and to such persons as he might be directed by the latter company. If that company directed the driver to deliver coal to A., the ice company had no authority or power to direct him to deliver the coal to B., or to C., or to any one else. In delivering the load of coal in question the driver was therefore under the immediate control and direction of the coal company, precisely the same as though he had been originally employed by it for that purpose. For the purpose of that transaction the driver was the agent and employé of the coal company, although in fact and in law he may have remained the general servant of the ice company. The test respecting responsibility is, by which company was he employed and for which one was he acting in delivering the coal in question? Manifestly, for that purpose, he was employed by, and was acting for, the coal company, and not for the ice company. That being so, the coal company, and not the ice company, must be held responsible for his negligent act which caused the injury. Such is clearly the effect of the decisions we have cited in the opinion. We are still clearly of the opinion that our former conclusion is right, and it is therefore adhered to.

The petition for a rehearing is denied.

CORFMAN, C. J., and WEBER and THURMAN, JJ., concur.